MATTER OF LAM

In Deportation Proceedings

A-17563885

*Decided by Board July 5, 1972*

(1) A special inquiry officer does not cease to be impartial in a deportation proceeding merely because in his quest for the truth he seeks to clarify the record by calling the attention of the trial attorney to certain areas of inquiry not yet developed. [Cf. *Matter of Martinez-Solis*, Interim Decision No. 2135.]

(2) Since 8 CFR 242.17(d) provides that an application for voluntary departure made during the deportation hearing "shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability," a special inquiry officer, in such case, may properly consider the issue of voluntary departure prior to ruling on the issue of deportability, and may properly deny voluntary departure where the respondent refuses to testify in support of his application.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Nonimmigrant crewman—remained longer.

ON BEHALF OF RESPONDENT: Bruce W. Okney, Esquire
2001 Midwest Plaza Bldg.
Minneapolis, Minnesota 55402
(Brief filed)

The respondent, a native of mainland China, male, unmarried, 28 years of age, appeals from the special inquiry officer's order finding him deportable as charged and directing his deportation to Hong Kong. The appeal will be dismissed.

The respondent refused to identify himself as the alien upon whom the order to show cause was served on January 13, 1971. He also refused to testify as to his right to be in the United States. Counsel for the respondent claimed privilege under the Fifth Amendment to the Constitution on the ground that the respondent's answers may tend to incriminate him (pp. 1-4). He instructed the respondent not to answer any questions. The respondent himself did not claim the privilege against self-incrimination.

The order to show cause charges that the respondent is a native

and citizen of China who was admitted to the United States as a nonimmigrant crewman at Charleston, South Carolina on or about January 5, 1968 and was authorized to remain for the period of time his ship was in port, not to exceed 29 days. It is alleged that the respondent's ship departed on January 11, 1968 and that the respondent remained in the United States in violation of section 241(a)(2) of the Immigration and Nationality Act, 8 U.S.C. 1251(a)(2).

The evidence presented by the Government on the issue of deportability is fully discussed in the opinion of the special inquiry officer. Briefly, it consists of the testimony of the apprehending immigration officer who identified the respondent as the person on whom he served the warrant of arrest entered as Exhibit 2 (p. 7). This witness also identified the respondent as the person who made the statement attached to Form I-213, dated January 13, 1971 and entered in evidence as Group Exhibit 3. The witness testified that the respondent was advised of his constitutional rights to remain silent, to be represented by counsel and the fact that any statement made by him could be used against him (p. 9 and Form I-214, Group Exh. 3). The witness also testified that the respondent elected to sign the waiver indicating his willingness to make a statement without an attorney present and that he fully understood what he was doing (pp. 9 and 10, Exh. 3).

The Government relies on documentary evidence to establish alienage, the place and time of entry and the fact that the respondent was admitted as a nonimmigrant crewman and remained longer than permitted (Exhs. 4, 5, 6 and 7). The apprehending officer identified a "crewman's landing permit" (Form I-95A), issued in the respondent's name as a document voluntarily surrendered to him by the respondent (p. 20 and Exh. 4). Also admitted in evidence is a "seaman's identity book," issued in the name of the respondent at Hong Kong on August 3, 1963, and a "seaman's discharge book," No. 60977, issued at Hong Kong on May 26, 1965 (Exhs. 5 and 7, pp. 29 and 34). The special inquiry officer stated for the record that Exhibits 5 and 7 contain photographs which appear to be an excellent likeness of the respondent (pp. 29 and 34).

Exhibit 6 is a report of investigation which relates to a crewman by the same name as the respondent, who was reported as a deserting crewman at the port of New York on January 11, 1968. The report states that this crewman last arrived in the United States at the port of Charleston, South Carolina aboard the M/V "Tvera" on January 5, 1968 and was inspected and admitted as a "D-1" crewman. All of the exhibits were received in evidence over the objections of counsel.

169

The special inquiry officer finds that the proof presented by the Government fully supports the allegations set forth in the order to show cause and that the respondent's deportability is established by evidence which is clear, unequivocal and convincing (p. 2, special inquiry officer's opinion). Counsel in his excellent brief on appeal asserts that the decision of the special inquiry officer must be reversed for failure of the Government to establish deportability by competent evidence (p. 16, counsel's brief).

Counsel contends that the respondent did not receive a fair hearing in accordance with the due process clause of the Fifth Amendment because, "The Special Inquiry Officer was so predisposed and sympathetic to the case of the government that any opportunity for the respondent to receive a fair hearing was nullified" (p. 2, counsel's brief). Counsel alleges that during the course of the hearing, the special inquiry officer showed bias by assuming the functions of the trial attorney in laying the foundation for the introduction of certain documentary evidence (pp. 6–12, 28), by cross-examining the Government witness to bolster the Government's case (pp. 18, 22–23, 24) and by stating for the record at the outset of the hearing that, "in order for the respondent to prevail ... he had the burden of proof of demonstrating that he was not deportable" (p. 3, counsel's brief).

We find no merit to counsel's contention that the respondent was denied a fair hearing by reason of the asserted bias and predisposition of the special inquiry officer. A contested deportation is in essence a quest for the truth. We recognize that there are limits within which a hearing officer in an administrative proceeding should act in his quest for the truth. These limitations were aptly stated in *Tele-Trip Company* v. *N.L.R.B.*, 340 F.2d 575 (C.A. 4, 1965) as follows:

> ... Certainly a trial examiner is free to and should interrupt witnesses on occasions when necessary to a clarification of the testimony. But he must be impartial and must not attempt to establish proof to support the position of any party to the controversy; once he does so he becomes an advocate or a participant, thus ceasing to function as an impartial trier of fact, and a hearing so conducted is lacking in the fundamental fairness required by due process. ...

A special inquiry officer does not cease to be impartial merely because, in his quest for the truth, he seeks to clarify the record by calling the attention of the trial attorney to certain areas of inquiry not yet developed. Cf. *Matter of Martinez-Solis*, Interim Decision No. 2135 (BIA, 1972). We have carefully reviewed the record in light of the assignments of error referred to by counsel in his brief. We find nothing in the record which supports counsel's contention that the hearing accorded the respondent is lacking in the fundamental fairness required by due process because the

special inquiry officer failed to function as an impartial trier of fact.

We next turn to counsel's contention that the special inquiry officer "demonstrated his partiality toward the government" by improperly informing the respondent that "in order ... to prevail at the hearing he had the burden of proof of demonstrating that he was not deportable" (p. 3, counsel's brief). Counsel refers to the occasion at the outset of the hearing (p. 5) when the special inquiry officer addressed the alleged respondent, as yet unidentified, as follows:

... I wish to tell you that the order to show cause states that you are to have a hearing in deportation proceedings. The *purpose* of the hearing is to show me, if you can, why you should not be deported on the charges contained in the order to show cause ... Do you understand? (Emphasis supplied.)

The respondent replied, "I do not understand all the allegations. My attorney will answer for me" (p. 5). The special inquiry officer then addressed counsel and informed him of the respondent's rights as set forth in 8 CFR 242.16(a).

We find nothing prejudicial or improper in the special inquiry officer's statement quoted above. His statement refers specifically to the order contained in the order to show cause requiring an alien to appear for a hearing. This order reads in part as follows:

WHEREFORE, YOU ARE ORDERED to appear for hearing before a Special Inquiry Officer of the Immigration and Naturalization Service ... and show cause *why you should not be deported* from the United States on the charge(s) set forth above. (Emphasis supplied.)

The order contained in the order to show cause, *supra,* does not state that the alien upon whom it is served has the burden of proving deportability. Counsel merely seeks to confuse the issue by equating the special inquiry officer's use of the term "purpose of the hearing" with the well-established principle that the "burden" is upon the Government "to prove deportability" in a deportation proceeding. This burden, as counsel well knows, cannot be fulfilled by a mere accusation in the order to show cause. It can be satisfied only by evidence produced at the hearing which is clear, unequivocal and convincing, unless the alien admits the charge or charges. Furthermore, the respondent clearly stated in his reply to the special inquiry officer, "I do not understand the allegations," referring to the order to show cause, and informed the special inquiry officer that "[his] attorney will answer for me." Under the circumstances, we find no merit to counsel's contention that the manner in which the special inquiry officer conducted the hearing constitutes a sufficient basis for reversal because the respondent was deprived of due process of law (p. 5, counsel's brief).

Counsel contends that the Government failed to sustain its

171

burden of proof on the issue of deportability. Counsel's contention is directed to the admissibility and competence of the documentary evidence submitted by the Government and admitted by the special inquiry officer over his objections. Counsel argues that the evidence relied upon by the special inquiry officer was not obtained pursuant to the constitutional guarantees set forth in the Fourth, Fifth and Sixth Amendments to the Constitution and for this reason was not properly admissible at the deportation hearing because of the possible criminal jeopardy that could attach to the respondent under section 252(c) of the Immigration and Nationality Act, 8 U.S.C. 1282(c). Counsel maintains that the Government could not have established its case against the respondent without the documentary evidence and, accordingly, the admission of this evidence was clearly prejudicial (pp. 5–16, counsel's brief).

A deportation hearing is an administrative proceeding, civil in nature. Due process in such a proceeding ordinarily does not require adherence to judicial rules of evidence unless deviation would make the proceeding manifestly unfair. The sole criterion in appraising documentary evidence lawfully obtained is whether it has probative value and whether its use is consistent with a fair hearing, *U.S. ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 71 L. Ed. 560 (1927); *Morgano v. Pilliod*, 299 F.2d 217 (7 Cir., 1962), cert. denied 370 U.S. 924.

Counsel seeks to suppress evidence which he alleges was unlawfully obtained. We find no evidence, after a careful review of the record, that the documentary evidence supporting deportability was unlawfully obtained. It relates to the respondent's entry as a crewman and has probative value. The weight of authority supports our conclusion, *Marlowe v. INS*, 457 F.2d 1314 (C.A. 9, 1972) and cases cited; *Yam Sung Kwai v. INS*, 411 F.2d 683 (D.C. Cir., 1969), cert. denied 396 U.S. 877; *Navarrette-Navarrette v. Landon*, 223 F.2d 234, 237 (C.A. 9, 1955), cert. denied 351 U.S. 911; *Matter of Chen*, 12 I. & N. Dec. 603 (BIA, 1968); *Matter of Wong*, Interim Decision No. 2111 (BIA, 1971); *Matter of Tang*, Interim Decision No. 2080 (BIA, 1971); *Matter of Doo*, Interim Decision No. 1911 (BIA, 1968).

The respondent, through counsel, applied for the privilege of voluntary departure in lieu of deportation (p. 37). Counsel stated for the record that the respondent would not testify in support of his application for voluntary departure, because if he did, he would have to identify himself, which would place in jeopardy and defeat his initial defense on the issue of deportability, *i.e.*, his defense that the Government has not adequately identified the respondent for the purpose of finding him deportable as charged. Counsel

requested the special inquiry officer to rule on the issue of deportability prior to the consideration of the issue of voluntary departure (p. 36).

The special inquiry officer denied counsel's request. He made no finding as to the respondent's eligibility for the privilege of voluntary departure inasmuch as the respondent refused to answer any questions on that issue or on the issue of deportability. The special inquiry officer concluded that for this reason counsel's application for voluntary departure did not merit a favorable exercise of discretion (p. 6, special inquiry officer's opinion).

The regulations provide that an application for voluntary departure "shall be made only during the hearing [before a special inquiry officer] and shall not be held to constitute a concession of alienage or deportability in any case in which the respondent does not admit his alienage or deportability," 8 CFR 242.17(d). The regulations also provide that an applicant for the privilege of voluntary departure "shall have the burden of establishing that he is eligible for any requested benefit or privilege and that it should be granted in the exercise of discretion" (ibid). An applicant for the privilege of voluntary departure has the burden of satisfying the Attorney General, or his duly authorized delegate,"that he is, and has been, a person of good moral character for at least five years preceding his application for voluntary departure" and that "he is willing and has the immediate means with which to depart promptly from the United States," section 244(e), Immigration and Nationality Act and 8 CFR 244.1.

The Supreme Court has said that "an applicant for suspension [of deportation], 'a matter of discretion and of administrative grace'...must, upon the request of the Attorney General, supply such information that is within his knowledge and has a direct bearing on his eligibility under the statute. The Attorney General may, of course, exercise his authority of grace through duly delegated agents...." The Supreme Court did not pass upon the issue of whether a petitioner for suspension of deportation is "justified in his personal refusal to answer." It said, however, that "this did not relieve him under the statute of the burden of establishing the authority of the Attorney General to exercise his discretion in the first place," *Kimm v. Rosenberg*, 363 U.S. 405, 408 (1960).

We believe that under the circumstances of this case, the special inquiry officer was justified in denying counsel's request to rule on the issue of deportability prior to considering the respondent's application for voluntary departure. 8 CFR 242.22 provides in substance that a motion to reopen will not be granted if the alien was afforded an opportunity to apply for discretionary relief at the

173

hearing, unless circumstances have arisen thereafter on the basis of which the request is being made. The petitioner in the case of *Williams* v. *Sahli*, 292 F.2d 249, 250, 251 (C.A. 6, 1961), cert. denied 368 U.S. 977, argued that the regulations governing an application for suspension of deportation violated due process because the procedure required him to submit an application for relief before his alienage and deportability were determined. The court held that there was no merit to the petitioner's claim. It is our opinion, in light of the authority cited above, that there is no merit to counsel's claim that the respondent's initial defense on the issue of deportability would be defeated if he testified on the issue of his eligibility for voluntary departure. 8 CFR 242.17(d) specifically provides that an application for discretionary relief "shall not be held to constitute a concession of alienage or deportability" under the circumstances of this case.

In our view, the special inquiry officer should not have based his denial of the respondent's application for voluntary departure in the exercise of discretion on the fact that the respondent refused "to answer any questions ... on the issue of deportability" (p. 6, special inquiry officer's opinion). Reversal is not necessary, however, because there is an alternate basis for denial which in our view requires dismissal of the appeal. The respondent failed to establish his eligibility for voluntary departure as required by the statute and the regulations, *Kimm* v. *Rosenberg, supra*.

Our consideration of the record before us fully recognizes the respondent's right to the privileges afforded by the Fourth, Fifth and Sixth Amendments to the Constitution. We conclude that on this record, the respondent's deportability has been established by clear, unequivocal and convincing evidence that the facts alleged in the order to show cause as grounds for deportation are true, *Woodby* v. *INS*, 385 U.S. 276, 286 (1966). The documentary evidence relates to the respondent, has probative value and is admissible. Cf. *Pang* v. *INS*, 368 F.2d 637 (3 Cir., 1966), cert. denied 368 U.S. 1037 (1967). He has been accorded a fair hearing. An appropriate order will be entered.

**ORDER:**   The appeal is dismissed.