**Jahangir BABAI and Gitti Fakrainejad, Petitioners–Appellants,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent–Appellee.**

**No. 91–3869.**

United States Court of Appeals, Sixth Circuit.

Submitted Dec. 10, 1992.

Decided Feb. 3, 1993.

Richard I. Fleischer (briefed), Cincinnati, OH, for petitioners.

Nicholas J. Pantel, Asst. U.S. Atty., D. Michael Crites, U.S. Atty., Office of the U.S. Atty., Cincinnati, OH, Robert Kendall, Jr., Richard M. Evans, Charles E. Pazar (briefed), U.S. Dept. of Justice, Civ. Div.; and Ellen Sue Shapiro, U.S. Dept. of Justice, Immigration Litigation, Civ. Div., Washington, DC, for respondent.

Before: MERRITT, Chief Judge; and MARTIN and MILBURN, Circuit Judges.

MERRITT, Chief Judge.

Petitioners appeal from the decision of the Board of Immigration Appeals revers-

ing the Suspension of Deportation granted them by Immigration Judge Dennis Kramer. For the reasons stated below, we vacate the decision of the Board of Immigration Appeals, and remand the case for further consideration.

## I.

Petitioners Jahangir Babai and Gitti Fakrainejad, husband and wife, are natives and citizens of Iran. They entered the United States in 1979, Babai as a student authorized to remain until August, 1983, and Fakrainejad as a visitor for pleasure. Fakrainejad later changed her status to spouse of a student, and was also authorized to remain in this country until August, 1983. Petitioners have two children: Sason, born in Iran on or about April 23, 1978, and Houman, born in the United States December 2, 1981. Although Petitioners have raised the children "to believe in God," they have not raised them in the Islamic faith or taught them the Koran. Although the Petitioners speak some Farsi with each other, the children speak only English.

Petitioners overstayed their authorization. In January of 1986 their request for asylum was denied, and the Immigration and Naturalization Service ("INS") issued and served Orders to Show Cause on petitioners February 21, 1986, seeking their deportation under Section 241(a)(2) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(a)(2). A deportation hearing was held July 7, 1986, and continued to November 7, 1986.

At the hearing, Babai testified that he had left a very good government job in Iran in the Economic Affairs and Tax Department. Although he had earned two master's degrees while in the United States, he would not be able to find comparable employment if he returned. He left Iran shortly after Khomeini came to power, partly because of fear that he would be persecuted for his refusal to hang a picture of Khomeini in his office. He received a letter dated 9/14/81 from Employment Services in his former department in Iran informing him that "you have been determined as an undesirable element to the Islamic Republic and your employment in this Ministry has been terminated.... Upon your return to this country you shall be dealt with according to the laws and measures of the Islamic Republic."

Immigration Judge Richard Kramer denied petitioners asylum, but granted them suspension of deportation. Petitioners did not appeal the denial of asylum to the Board of Immigration Appeals ("Board"), but the INS appealed the suspension of deportation. Almost five years later, the Board vacated the immigration judge's order of suspension of deportation and granted voluntary departure. In an order issued August 27, 1991, the Board held that statutory eligibility for suspension of deportation required a petitioner to establish "extreme hardship," and found that the immigration judge had erred in concluding extreme hardship existed.

## II.

### A.

Section 244 of the Immigration and Naturalization Act, 8 U.S.C. § 1254, permits the suspension of deportation of any alien who (1) has been physically present in the United States for not less than seven years; (2) is a person of "good moral character"; and (3) is "a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence." 8 U.S.C. § 1254(a)(1).

Even if these prerequisites are met, it remains in the discretion of the Attorney General to suspend, or refuse to suspend, deportation. *INS v. Rios–Pineda*, 471 U.S. 444, 446, 105 S.Ct. 2098, 2100, 85 L.Ed.2d 452 (1985). The Attorney General, as authorized by Congress, 8 U.S.C. § 1103, has delegated the authority and discretion to suspend deportation to immigration judges, whose decisions are subject to review by the Board. 8 C.F.R. §§ 242.8, 242.21. The Supreme Court has held that a narrow interpretation of 'extreme hardship' is consistent with the exceptional nature of the

suspension remedy. *INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981).

Our task in this case is to review the Board's exercise of its discretion. "Because the determination of extreme hardship depends upon the facts of each case, the Board's discretion may be properly exercised only if it fully considers the relevant facts. Failure to consider all the factors which bear on extreme hardship is an abuse of the Board's discretion." *Mejia–Carrillo v. INS,* 656 F.2d 520, 522 (6th Cir.1981). We must therefore examine the factors relied upon by the Board in its determination that extreme hardship was not established by Petitioners.

The Board considered the following findings of the immigration judge in its decision to reverse him:

> "He ... found the respondents had established extreme hardship to themselves and to their citizen child on account of the inability of the male respondent to work at a professional position in Iran, the inability of the female respondent to work at all, the hardship imposed by the hostile political climate and the purported 'religious demands' and problems.... The hardship to the child included difficulty in obtaining an education and the political and religious indoctrination he would allegedly undergo."

Board Decision at 2. The Board reversed the immigration judge on each of these grounds.

The immigration judge specifically found that "the respondents appear to be credible in their testimony." Immigration Judge's Order at 9. Despite extensive testimony by Babai concerning his fear of religious persecution and his production of the letter from his former employers warning that he would be "dealt with according to the laws and measures of the Islamic Republic" as an "undesirable element," the Board held that the "nature of the religious problems the immigration judge found [petitioners] might face is not clear.... The so-called threat in the letter of dismissal is most likely the empty rhetoric engaged in by this government." Board Decision at 4–5. The immigration judge found that "respondent wife would not be able to find a position in Iran based upon the new philosophy of women not working." Immigration Judge's Order at 9. The Board held that the record did not support this finding. Board Decision at 5.

The immigration judge stated in his Order that Babai "read several articles [aloud at the hearing] concerning schools not having enough funds to provide classrooms and studies for the students and a number of schools being closed." Immigration Judge's Order at 8. From this, the immigration judge concluded that the United States citizen child Houman would suffer extreme hardship if he returned with his parents to Iran, because "[b]ased upon the evidence, he would be returning to a country where the schooling is looked down upon and not much funds are provided for schooling ..." *Id.* at 11. The Board found that "there is *no* corroborative evidence that educational opportunities would be significantly reduced for the United States citizen son in Iran." Board Decision at 5 (emphasis supplied).

## B.

■ Although we may find the immigration judge's reasoning more persuasive than that of the Board about what constitutes "extreme hardship" in this case, a reviewing court may not overturn the decision of the Board merely because it prefers another interpretation of the statute. *Wang,* 450 U.S. at 144, 101 S.Ct. at 1031. However, we find that reversal is required on other grounds. The Board did not consider the impact on Houman should he remain in the United States without his parents. The plain language of the statute requires the Board to consider the hardship to a citizen child of a deportable alien, and extreme hardship *to that child alone* may justify suspension of deportation. 8 U.S.C. § 1254(a)(1). Petitioners' child Houman, as a United States citizen, has an absolute right to remain in the United States. *Cerrillo–Perez v. INS,* 809 F.2d 1419, 1423 (9th Cir.1987). Under our analysis in *Mejia–Carrillo,* 656 F.2d 520, the Board abused

its discretion by failing to consider the hardship to Houman if he exercises his citizenship right. *Cerrillo–Perez*, 809 F.2d at 1426 ("the hardship to a citizen child remaining in this country ... is a factor that must be considered on a case by case basis by the BIA"); *see also Zamora–Garcia v. INS*, 737 F.2d 488, 493–94 (5th Cir. 1984) ("we do require consideration of the hardship to [petitioner's child] posed by the possibility of separation from [her foster family in the United States]"). We caution the Board on remand that its consideration of the impact on Houman must be "careful and individualized." *Jara–Navarrete v. INS*, 813 F.2d 1340, 1343 (9th Cir.1986).

### C.

The Board acknowledged that "[r]elevant factors, though not 'extreme' in themselves, must be considered in the aggregate in determining whether 'extreme hardship' exists." Board Decision at 3. *See Hernandez–Patino v. INS*, 831 F.2d 750, 752 (7th Cir.1987) (citing *Bueno–Carrillo v. Landon*, 682 F.2d 143, 146 n. 3 (7th Cir.1982)). However, the Board dealt with this obligation summarily:

> We have considered the record and conclude that there are no extraordinary factors which could add up to unusual hardship, such as, advanced age, inability to find any work, total alienation from the culture, inability to practice one's religion, lack of relatives in the home country, or inability to speak the primary language.

Board Decision at 4. Our disposition of the case does not require us to determine whether this conclusory statement satisfies the requirement that the Board "consider" the factors in the aggregate.

### III.

The Attorney General, and his delegate the Board, exercise very broad discretion in determining which illegal aliens merit the remedy of suspension of deportation. It is our duty to ensure that this discretion is exercised in a way that is not "arbitrary, irrational or contrary to law." *Mejia–Carrillo*, 656 F.2d at 522. By failing to consid-

er the impact on Houman should he choose to remain in the United States if Petitioners are deported, the Board abused its discretion. We therefore VACATE the decision of the Board and REMAND this case for further proceedings not inconsistent with this opinion.