**Mohamad Mahmoud Hussein
ELNEMR, Petitioner,**

v.

**IMMIGRATION & NATURALIZATION
SERVICE, Respondent.**

No. 02–3259.

United States Court of Appeals,
Sixth Circuit.

March 15, 2004.

Firooz T. Namei, McKinney & Namei, Cincinnati, OH, for Petitioner.

Ann Carroll Varnon, U.S. Department of Justice, Washington, DC, for Respondent.

Before GIBBONS and SUTTON, Circuit Judges; and TARNOW, District Judge.*

TARNOW, District Judge.

Petitioner, Mohamad Mahmoud Hussein Elnemr, is a native and citizen of Egypt who seeks judicial review of a final order of deportation issued by the Board of Immigration Appeals (BIA) on February 5, 2002. Petitioner raises three challenges to

---

* The Honorable Arthur J. Tarnow, United States District Judge for the Eastern District of Michigan, sitting by designation.

the final order of deportation. First, he asserts that the streamlining regulation underlying the BIA's final order is invalid. Second, Petitioner claims that the application of the stop-time rule to his case is impermissibly retroactive. Finally, he challenges the BIA's order denying suspension of deportation on the basis of the physical presence requirement. After reviewing each of Petitioner's arguments, we find that they are without merit and therefore AFFIRM the final order of the BIA.

## II. BACKGROUND

Petitioner entered this country on a tourist visa with authorization to remain for no longer than six months. When Petitioner exceeded his stay beyond the period authorized, the INS initiated deportation proceedings on April 19, 1996, by issuing an Order to Show Cause (OSC) as to why he should not be deported.

At his first hearing on December 19, 1996, Petitioner admitted all of the allegations contained in the OSC, including: 1) that he is a native and citizen of Egypt; 2) that he entered the United States on or about July 12, 1990; and 3) that he overstayed his six-month tourist visa by remaining in the country beyond January 11, 1991. At that same hearing, Petitioner admitted deportability, but requested suspension of deportation, adjustment of status, and voluntary departure.

At a subsequent calendar hearing on March 20, 1997, the request for adjustment of status was withdrawn. However, Petitioner reiterated his request for suspension of deportation and voluntary departure. In his application for suspension of deportation. Petitioner alleged that his initial entry into the United States occurred in 1988, rather than in 1990 as stated in the OSC.

At the merits hearing in November 1998, Petitioner testified that he first entered the U.S. in 1987 as a tourist in Los Angeles. At that time, he opened his own travel agency, which he operated for four years after securing an L–1 visa. Petitioner stated that he operated tours to Egypt and Israel, making numerous trips outside the country in the context of running his travel business, although none of these trips exceeded five days in duration. Eventually, however, the number and duration of trips made outside the country became a point of confusion for the immigration judge (IJ). The IJ agreed to continue the hearing to permit counsel for Petitioner to have Petitioner's passport entry stamps translated and to produce a document clearly tabulating the trips made outside the country.

On March 3, 2000, the Petitioner's hearing was re-convened and the IJ identified the key issue as being "whether or not [Petitioner] had the seven years of continuous physical presence" required for suspension of deportation. At this hearing. Petitioner produced a document translating and explaining his passport entry stamps. Upon reviewing this document, the IJ determined that Petitioner's physical presence in the United States began on July 12, 1990, and terminated upon service of the OSC, on April 23, 1996, a period of less than seven years required for suspension of deportation. Based on this finding, the IJ declined to review the additional elements necessary to establish suspension of deportation. The IJ thus denied Petitioner's application for suspension of deportation, but granted the application for voluntary departure.

On March 29, 2000, Petitioner appealed the IJ's decision to the Board of Immigration Appeals. The BIA affirmed the lower court decision without opinion on February 5, 2002. This appeal followed.

## III. STANDARD OF REVIEW

Questions of law in deportation proceedings are subject to *de novo* review. *Sad v. INS*, 246 F.3d 811, 814 (6th Cir.2001). The BIA's factual findings are reviewed for substantial evidence. *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir.1999). When the BIA issues an order pursuant to 8 C.F.R. § 1003.1(a)(7), affirming the result of the IJ's decision but not necessarily adopting the IJ's reasoning, it is the IJ's decision that furnishes the basis for judicial review under the relevant standard. *Denko v. INS*, 351 F.3d 717, 723 (6th Cir.2003).

## IV. ANALYSIS

A. The Legal Sufficiency of the Streamlining Regulation

█ Petitioner challenges the legal adequacy of the BIA's final order because it fails to explain its reasoning in affirming the decision of the IJ. In support of his position, Petitioner cites several cases that support the proposition that the BIA must articulate specific reasons in support of its decision, both to provide an adequate basis for judicial review and to demonstrate that it has conducted a fair, reasoned and individualized analysis.[1]

None of these cases, however, involves the recent streamlining regulation at issue in Petitioner's case. This regulation authorizes an individual Board Member, rather than a three-member panel, to affirm the decision of an immigration judge without opinion under certain conditions.[2] *See* 8 C.F.R. § 3.1(a)(7), now codified at 8 C.F.R. § 1003.1(a)(7) (2003). In such cases, the language of the order is limited to the following:

> The Board affirms, without opinion, the result of the decision below. The decision below is, therefore, the final agency determination. See 8 C.F.R. § 1003.1(a)(7).

Further, such orders "shall not include further explanation or reasoning." 8 C.F.R. § 1003.1(a)(7)(iii). In Petitioner's case, the BIA order was issued pursuant to this streamlining regulation and in conformance with it.

Petitioner insists that notwithstanding the BIA's compliance with its own streamlining regulation, the regulation itself is invalid as a violation of a fundamental tenet of administrative law that requires agencies to provide a reasoned basis for their decision-making, both to furnish a basis for judicial review and to ensure a thorough, individualized review by the agency. We disagree.

The Sixth Circuit has recently addressed this argument and has declined to find any error. In *Denko*, a panel of this court held that the streamlining regulation does not violate administrative law requirements.[3]

---

**1.** *See Babai v. INS*, 985 F.2d 252, 254 (6th Cir.1993); *Zhao v. United States Department of Justice*, 265 F.3d 83, 93 (2d Cir.2001); *Tukhowinich v. INS*, 64 F.3d 460, 463 (9th Cir.1995); *Kahssai v. INS*, 16 F.3d 323, 325 (9th Cir.1994); *Rubio–Rubio v. INS*, 23 F.3d 273, 278 (10th Cir.1994).

**2.** The single Board Member to whom a case is assigned may affirm the decision of the Service or the Immigration Judge, without opinion, if the Board Member determines that the result reached in the decision under review was correct; that any errors in the decision under review were harmless or nonmaterial; and that

(A) the issue on appeal is squarely controlled by existing Board or federal court precedent and does not involve the application of precedent to a novel fact situation; or

(B) the factual and legal questions raised on appeal are so insubstantial that three-Member review is not warranted. 8 C.F.R. § 1003.1(a)(7)(ii).

**3.** With its decision in *Denko*, this Circuit joined several sister circuits in upholding the streamlining regulation against both adminis-

*See Denko v. INS,* 351 F.3d 717 (6th Cir. 2003). *Denko* rejected the argument that the streamlining regulation prevents judicial review as "directly contradicted by the terms of the regulation which indicate that the IJ's opinion becomes the final agency determination subject to review." *Id.* at 728. Because "the IJ's opinion becomes the reasoned explanation needed for review," *id.* at 729, an adequate basis exists to permit judicial review.

*Denko* also rejected the assertion that the streamlining regulation fails to guarantee appropriate, individualized review. Such a challenge "cannot stand when the only evidence that the summary affirmance procedure causes the BIA to disregard its review responsibilities is the nature of the procedure itself combined with statistics indicating that thorough review would be difficult." *Id.* at 728 (citing *Albathani v. INS,* 318 F.3d 365, 378–79 (1st Cir.2003)). Because Petitioner has only generally asserted a lack of individualized review unsupported by any evidence, this Court "will not assume such a complete break-down in the system in the absence of tangible evidence to support such a conclusion." *Id.* at 729. The streamlining regulation is, therefore, valid.

B. Application of the Time–Stop Rule to Petitioner's Case

█ Petitioner next argues that the "time-stop" rule was retroactively applied to his case in violation of *Landgraf v. USI Film Prods.,* 511 U.S. 244, 272, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), which required clear Congressional intent to overcome a judicial presumption against retroactivity. Specifically, Petitioner contends that the determination of the "physical presence" requirement for suspension of deportation was made under a set of rules not in effect at the time Petitioner was issued his OSC.

Prior to the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104–208, 110 Stat. 3009 (IIRIRA), suspension of deportation required three elements, one of which was seven years of "continuous physical presence" in the United States. In IIRIRA. Congress passed a "stop-time" rule to change the way that continuous physical presence was calculated. It terminated the accrual of physical presence upon service of the charging document, rather than continue to permit an alien to become eligible because of administrative delays or appeals.[4] Congress also provided that this time-stop rule would apply retroactively.[5]

Using this argument, Petitioner disputes the IJ's determination that his physical presence ended upon service of his OSC in April 1996. However, this issue is no longer contestable in the Sixth Circuit. In *Suassuna v. INS,* this Court reaffirmed decisions in *Ashki v. INS,* 233 F.3d 913 (6th Cir.2000), and *Bartoszewska–Zajac v. INS,* 237 F.3d 710 (6th Cir.2001), to hold that "for purposes of determining eligibility for suspension of deportation in cases

trative law and due process challenges. *See Yuk v. Ashcroft,* 355 F.3d 1222 (10th Cir. 2004); *Dia v. Ashcroft,* 353 F.3d 228 (3d Cir.2003); *Carriche v. Ashcroft,* 350 F.3d 845 (9th Cir.2003); *Georgis v. Ashcroft,* 328 F.3d 962 (7th Cir.2003); *Mendoza v. U.S. Att'y Gen.,* 327 F.3d 1283 (11th Cir.2003); *Soadjede v. Ashcroft,* 324 F.3d 830 (5th Cir.2003); *Albathani v. INS,* 318 F.3d 365 (1st Cir.2003).

4. This rule provides that "any period of . . . continuous physical presence in the United States shall be deemed to end when the alien is served a notice to appear under section 1229(a)." 8 U.S.C. § 1229b(d)(1).

5. *See* IIRIRA, § 309(c)(1), which states that § 240A "shall apply to notices to appear issued before, on, or after the date of enactment of this Act [September 30, 1996]."

that were pending as of April 1, 1997, the law of the Circuit is that the alien's period of continuous physical presence ends upon service of the order to show cause, even if such order was issued prior to the enactment of the stop-time rule." 342 F.3d 578, 582–83 (6th Cir.2003). Therefore, despite the fact that Petitioner was served with notice of the OSC prior to the enactment of IIRIRA. the IJ's application of the stop-time rule to Petitioner's case was proper. Petitioner's appeal on this issue is therefore denied.

C. The Continuous Physical Presence Requirement

■ Petitioner also alleges that the IJ's denial of suspension of deportationbased on the finding that Petitioner did not have seven years of continuous physical presence constitutes an abuse of discretion. We disagree and affirm for the reasons stated below.

As a preliminary matter, we first address the appropriate standard of review. Petitioner argues that the IJ's decision is reviewable under the abuse of discretion standard. Although suspension of deportation is a form of discretionary relief reviewable under the abuse of discretion standard, see *United States ex rel. Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), the discrete assessment of the continuous physical presence element is a factual finding. Therefore it is reviewable under the sub-

stantial evidence standard. Because we find that the IJ's determination is supported by substantial evidence, we find no error.

Petitioner argues that he meets the continuous physical presence requirement because he had been in the United States from June 1987 until he was served with an Order to Show Cause on April 26, 1996.[6] First, we note that Petitioner admitted to the allegations contained in the OSC at his calendar hearing, one of which included a statement that he entered the country on or about July 12, 1990. This fact was further supported by the document describing the trips Petitioner made outside the country from 1989 to 1990. These trips ranged in duration from three weeks to nearly four months, cumulatively totaling more than twelve months outside the country. The fact that Petitioner was a travel agent engaged in lawful activity during this time is irrelevant to the analysis. Further, for Petitioner to dispute the accumulated twelve months outside the country as "unsupported by the evidence" is unpersuasive when the IJ's findings in this regard were based on a document prepared by Petitioner's own counsel and provided to the immigration court for the express purpose of clarifying Petitioner's continuous physical presence. On the basis of this submission, the IJ determined that Petitioner's continuous physical presence ran from July 12, 1990, to April 26, 1996, a period of less than the requisite seven years. For these reasons, we find

6. The statutory standard for determining whether physical presence is continuous is also under dispute by the parties. Under the old statute, continuous physical presence was maintained if the absence from the United States was "brief, casual, and innocent and did not meaningfully interrupt the continuous physical presence." *See* 8 U.S.C. § 1254(b)(2) (1996). Respondent insists that a new standard, initiated by IIRIRA, should govern. This newer, more stringent standard

states that a continuous presence is broken "if the alien has departed from the United States for any period in excess of 90 days or for any periods in the aggregate exceeding 180 days." Immigration and Naturalization Act ("INA") § 240A(d)(2).

We find that, because substantial evidence supports the IJ's finding even under the less stringent requirements of the "brief, casual and innocent" test, it is not necessary to determine which standard governs this case.

the IJ's finding supported by substantial evidence on the record as a whole and affirm the final BIA order denying suspension of deportation.

## V. CONCLUSION

For the foregoing reasons, the Petitioner's arguments are rejected. The final order of the BIA is affirmed.