NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0365n.06
Filed: June 23, 2008

No. 07-3079

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ABDUL SANEH, | ) | |
| | ) | |
| **Claimant-Appellant,** | ) | **ON APPEAL** FROM THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| MICHAEL MUKASEY, | ) | |
| ATTORNEY GENERAL | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | |

_____

**OPINION**

**Before: KEITH and SUTTON, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** Claimant Abdul Saneh was found eligible

for removal from the United States, and subsequently agreed to voluntarily depart with the

condition that he waive appeal. Saneh now challenges the Immigration Judge's finding that

Saneh's waiver was properly made, and that Saneh was ineligible for adjustment of status or

cancellation of removal. For the reasons stated below, we hold that Saneh's appeal is without

merit because he fails to show prejudice resulting from an allegedly improper waiver.

_____

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District
of New Jersey, sitting by designation.

1

# I.

Abdulraouf Saneh, born in 1954, is a native and citizen of Lebanon. Saneh first entered the United States in 1984, with his wife Aicha, on an F-1 student visa. The couple has two children, Chafic and Mohamed, both United States citizens.

On September 16, 2003, the Department of Homeland Security ("DHS") commenced removal proceedings against him after DHS alleged that Saneh had failed to properly maintain his residency status. DHS charged Saneh with removability under 8 U.S.C. § 1227(a)(1)(C)(i) for failing to comply with the conditions of his visa.

Saneh had an initial calendar hearing before the Immigration Court on November 20, 2003. His next hearing was scheduled to occur in May 2004. In the interim, Saneh applied for two related immigration petitions: an I-140 Immigrant Petition for Alien Worker application and an I-485 Application to Adjust Status to Permanent Resident. Both were filed on October 8, 2003. Saneh then moved to continue his May 2004 hearing to allow more time for his I-140 petition to be approved. On April 15, 2004, the Immigration Judge ("IJ") denied Saneh's motion. Saneh also filed an Application for Cancellation of Removal on January 6, 2004.

On February 23, 2006, Saneh appeared, with counsel, at his removal hearing. The IJ heard testimony and received evidence concerning Saneh's visa violation and his request for cancellation of removal. The IJ ultimately determined that Saneh was removable and ineligible for relief, including cancellation of removal. (JA at 350.) Immediately thereafter, however, the IJ voided his order and granted a stipulation agreed upon between the parties that Saneh be allowed 120 days to voluntarily depart the United States in lieu of removal, pursuant to the Immigration and Nationality Act ("INA") § 240B; 8 U.S.C. § 1229. (JA at 350-51.) The grant of

voluntary departure was conditioned upon Saneh not filing a motion to reopen his case or an appeal of the IJ's decision. (*Id.*) Had Saneh not agreed to voluntarily depart, he would have been subject to compulsory removal, but would have retained a right to appeal.

On March 24, 2006, Saneh filed a motion to reconsider, asserting that the Government's trial attorney falsely represented to Saneh during the hearing that he would be able to return to the United States in about 14 months once his I-140 became current, and further, that the Government attorney had not mentioned that Saneh would be subject to a ten-year bar on reentry pursuant to 8 U.S.C. § 1182(a)(9)(B)(i)(II), resulting from his time of illegal residence in the United States. Saneh claimed that he "relied to his detriment on these false representations before being forced into accepting voluntary departure." (JA at 341.) He also argued that the IJ should have granted a continuance of his hearing to allow for Saneh's visa to become current, which may have in turn rendered him eligible for adjustment of status. (*Id.*) The Government opposed the motion. It noted that Saneh discussed the option of voluntary departure with his counsel and that Saneh chose voluntary departure rather than a removal order with a right of appeal. (JA at 337-38.) The Government further argued that Saneh was ineligible for adjustment of status, and that Saneh should not be granted cancellation of removal.

On April 12, 2006, the IJ denied Saneh's motion to reconsider. (JA at 117-18.) The IJ recounted the facts of his February 23, 2006 hearing. At the outset, he noted that Saneh had stipulated on February 23, 2006 that "he had no proof that a visa was immediately available." (JA at 117.) The IJ stated that after he received the evidence supporting Saneh's removal, the Government offered Saneh voluntary departure in lieu of removal. Saneh considered this option with the assistance of counsel for twenty minutes, but "represented to the Court prior to the

decision that he was not interested in the Government's offer." (*Id.*) The IJ then indicated that he denied Saneh's application for cancellation of removal, finding that Saneh had failed to show the requisite hardship to a qualifying relative. The IJ remarked that Saneh subsequently requested that DHS renew its offer of pre-hearing voluntary departure: "When the Government acquiesced," the IJ observed, "[Saneh] then again pondered the renewed offer and then ultimately accepted the offer." (*Id.*) The IJ then stated that "[w]hile the Government argued in its closing argument on cancellation that [Saneh] might be able to adjust his status in the near future, there was never any such promise. . . . [and] there was absolutely no duress." (*Id.* at 118.) The IJ concluded that Saneh's stipulation to voluntary withdrawal was knowing, intelligent, and voluntary, and that, even in the absence of waiver, he was ineligible for relief to adjust his status or cancel his removal.

Saneh appealed the IJ's decision to the BIA. On January 11, 2007, the BIA affirmed the IJ's decision without opinion.

## II.

An undocumented resident may file a motion to reconsider an IJ's decision based on an error of law or fact. 8 U.S.C. § 1229a(c)(6)(A), (C). "The purpose of a motion to reconsider is not to present new evidence[.]" *Alizoti v. Gonzales*, 477 F.3d 448, 452 (6th Cir. 2007); *see also Dada v. Mukasey*, 554 U.S. –, 2008 WL 2404066, at *8 (June 16, 2008). When the BIA adopts the IJ's decision without opinion under 8 C.F.R. § 1003.1(e)(4)(ii), we review the IJ's decision upon appeal. *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

The IJ's denial of a motion to reconsider a removal order is reviewed under an abuse of

4

discretion standard. *Sanusi v. Gonzales*, 474 F.3d 341, 345 (6th Cir. 2007). Abuse of discretion can be shown when the IJ's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination against a particular race or group." *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982); *see also Babai v. INS*, 985 F.2d 252, 255 (6th Cir. 1993) (observing that the BIA abuses its discretion when it acts arbitrarily, irrationally, or contrary to law). "That a different decision would also have been within the [BIA]'s discretion cannot suffice to render [a] decision an abuse of discretion." *Alizoti*, 477 F.3d at 453.

Saneh first challenges his agreement to voluntarily depart, arguing that his waiver of rights accompanying his agreement was improperly obtained. Saneh's essential argument is that his waiver of appeal was not knowing because he was misinformed that he would be able to return in approximately 14 months, when his visa would supposedly become current. In fact, he is barred from returning for 10 years. *See* 8 U.S.C. § 1182(a)(9)(B)(i)(II) ("Any alien [] who . . . has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's departure or removal from the United States, is inadmissible.").[1] However, we need not reach this issue because Saneh fails to

---

[1] An exemption to removal may be granted for an undocumented resident who is "the spouse or son or daughter of a United States citizen or of an alien lawfully admitted for permanent residence, if it is established to the satisfaction of the Attorney General that the refusal of admission . . . would result in extreme hardship to the citizen or lawfully resident spouse or parent of such alien." 8 U.S.C. § 1182(a)(9)(B)(v). Saneh does not qualify for this exemption because neither his parents nor his spouse are United States citizens or lawful permanent residents. Further, while Saneh was not formally ordered removed due to his voluntary departure agreement, had he been, he still would have been barred for 10 years. *See* 8 U.S.C. § 1182(a)(9)(A)(ii) (detailing that an alien ordered removed may not seek readmission within 10 years of the date of departure or removal).

demonstrate that he has been prejudiced by this alleged improper waiver.

"[I]n order to prevail on a procedural due process challenge," Saneh must demonstrate "prejudice." *Graham v. Mukasey*, 519 F.3d 546, 549 (6th Cir. 2008). "Indeed, we need not address the merits of a claim if there is no demonstration of prejudice[,]" *id.* at 549, because "[s]uch proof of prejudice is necessary to establish a due process violation in an immigration hearing," *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004). To establish prejudice, Saneh must show that the alleged waiver violation "would have changed the outcome of the case." *Garza-Moreno v. Gonzales*, 489 F.3d 239, 242 (6th Cir. 2007) (internal quotation marks and citation omitted).

Even were his waiver of appeal found improper, Saneh fails to show that the IJ abused his discretion when he found that Saneh was not entitled to adjustment of status or cancellation of removal. First, regarding Saneh's application for adjustment of status, the IJ recounted that Saneh "stipulated he could not demonstrate there was a visa immediately available[,]" (JA at 117), a necessary prerequisite for an I-485 adjustment of status application. Further, to this date, Saneh is still unable to show that his visa is current. Without a current visa, Saneh does not qualify for adjustment of status. *See Matovski v. Gonzales*, 492 F.3d 722, 727 (6th Cir. 2007) (summarizing the prerequisites to approval for adjustment of status applications, including that "an immigrant visa [must be] immediately available to him at the time his application is filed.") (internal quotation omitted).

Saneh argues that the IJ abused his discretion because he should have delayed his decision on adjustment of status until Saneh's visa became available. Saneh relies on "Section s.245 operations instructions" which states that "[w]hen a properly filed application cannot be

6

completed solely because visa numbers became unavailable subsequent to the filing, the application will be held in abeyance until a visa number is allocated." (Saneh's Br. at 17-18.) This Court believes that Saneh's cursory citation refers to Operations Instructions 245.4(a)(6), which regulates DHS internal procedures. The BIA has held, and some sister circuits have commented, that abeyance under instruction 245.4(a)(6) may be granted if issuing a visa depends only on the availability of the undocumented immigrant's assigned number. *In re Ho*, 15 I. & N. Dec. 692, 694, 1976 WL 32356 (BIA 1976); *see also Merchant v. U.S. Attorney Gen.*, 461 F.3d 1375, 1379 n.7 (11th Cir. 2006); *Hernandez v. Ashcroft*, 345 F.3d 824, 844 n.21 (9th Cir. 2003).

Had Saneh been eligible for adjustment of status, this operations instruction may have merited further review. However, under 8 U.S.C. § 1255(c), Saneh is statutorily ineligible for adjustment of status, which in turn renders instruction 245.4(a)(6) inoperative. (*See* Operations Instruction 245.4(a)(6), JA at 94 ("When a properly filed application cannot be completed *solely because visa numbers became unavailable* subsequent to the filing, the application will be held in abeyance until a visa number is allocated.") (emphasis added).) Under § 1255(c), an alien is ineligible for adjustment of status if he "is in unlawful immigration status on the date of filing the application for adjustment of status or [ ] has failed . . . to maintain continuously a lawful status since entry into the United States[.]" 8 U.S.C. § 1255(c). It is undisputed that Saneh filed an application for adjustment of status on October 8, 2003, after his lawful immigrant status had lapsed.[2] Saneh offers no argument or evidence here indicating that he was, contrary to the IJ's

---

[2] The Government asserts, without dispute from Saneh, that DHS "filed a Notice to Appear with the Immigration Court on September 16, 2003," charging "Saneh with removability . . . for failing to comply with the conditions of his visa." (Gov't Br. at 3-4.) Further, in a Notice to Appear dated January 15, 2003, the Government asserted that Saneh "failed to comp[l]y with the conditions of [his] status because [he] completed [his] program and did not depart the United

finding, in "lawful status" when he filed an adjustment of status application. Thus, the IJ did not err when he found Saneh ineligible for an adjustment "because he is out of status" under § 1255(c).

In his motion for reconsideration, Saneh also sought, alternatively, to cancel his removal. The INA provides:

> (1) []The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is inadmissible or deportable from the United States if the alien-
>
> > (A)    has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
> >
> > (B)    has been a person of good moral character during such period;
> >
> > (C)    has not been convicted of an offense . . .and
> >
> > (D)    *establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.*

INA § 240A(b), 8 U.S.C. § 1229b(b) (emphasis added). Here, the IJ did not abuse his discretion to deny Saneh's motion. Following testimony from Saneh's family, the IJ found that Saneh failed to qualify for cancellation of removal because Saneh did not prove "exceptional and extremely unusual hardship" to Saneh's children, both of whom are United States citizens. The record is replete with over 140 pages bespeaking his children's academic and extracurricular accomplishments. (JA at 174-321.) Saneh also asserts that his son Mohamed suffers from type-

---

States." (JA at 335.)

8

diabetes.  (JA at 57, 59-60.)  Nevertheless, we do not review the IJ's finding *de novo*, but rather under a highly-deferential abuse of discretion standard.  The IJ explained that Saneh failed to prove the extreme circumstances necessary to rise to the level required for cancellation of removal under § 240A(b).  Saneh presents no evidence, and we find no basis to support, that the IJ acted arbitrarily, irrationally, or contrary to law.  *See Babai*, 985 F.2d at 255.  Thus, we cannot find that the IJ abused his discretion to deny Saneh's application to cancel his removal.

As the IJ noted, Saneh "was given the choice of two unpleasant alternatives (1) a removal order with the right of appeal or (2) a final order of voluntary departure."  (JA at 118.)  Even had he not agreed to voluntary departure, Saneh would still have been found removable.  Accordingly, Saneh fails to show that he would have been prejudiced by the allegedly improper waiver.

## III.

For the foregoing reasons, we hereby affirm.