NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0401n.06

Nos. 12-3470 / 12-4078

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 03, 2014

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| BAHAA ABDELGHANI, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF |
| | ) | AN ORDER OF THE BOARD OF |
| | ) | IMMIGRATION APPEALS |
| ERIC HOLDER, Jr., | ) | |
| | ) | |
| Respondent-Appellee. | ) | |

---

BEFORE: BOGGS and KETHLEDGE, Circuit Judges; and RESTANI, Judge.[1]

BOGGS, Circuit Judge: Bahaa Abdelghani, a Lebanese national, seeks review of two decisions of the Board of Immigration Appeals (BIA), the first upholding an IJ's finding of a frivolous asylum application and a denial of a motion for a continuance, the second denying a motion to reopen. For the reasons stated below, we deny Abdelghani's petition for review.

I

Bahaa Abdelghani was first admitted to the United States from Lebanon on a non-immigrant student visa in 1994 to go to college at the University of South Alabama. [AR 563, 1046]. Abdelghani failed to attend and, in 2003, the Immigration and Naturalization Service (INS) served him with a Notice to Appear (NTA) in which it alleged removability under § 237(a)(1)(C)(i) of the Immigration and Nationality Act (INA) for failure to comply with the conditions of his non-immigrant visa. [AR 1046]. When Abdelghani appeared at his first

---

[1] The Honorable Jane A. Restani, Judge of the United States Court of International Trade, sitting by designation.

1

substantive hearing in July 2004, he admitted all the factual allegations in the NTA and announced his intention to submit an Application for Asylum and Withholding of Removal as well as a request for protection under the Convention Against Torture (CAT). [AR 708]. After two continuances, the IJ eventually scheduled a full merits hearing for the summer of 2006. [AR 714, 943, 712].

In the meantime, in April 2006, Abdelghani's father became a United States citizen. [AR 561]. Immediately before the 2006 removal hearing, Abdelghani moved for another continuance in order to allow him to file an I-485 petition to adjust his status to legal permanent resident by virtue of being the child of a United States citizen. [AR 716]. The IJ refused the continuance and, despite Abdelghani's seeming intention to withdraw his application for asylum and withholding of removal, Abdelghani ultimately chose to pursue the application, and a full merits hearing was held. [AR 715, 719].

It was during this hearing that Abdelghani's attorney and the IJ entered into a somewhat protracted back-and-forth regarding whether the priority date on Abdelghani's visa petition entitled him to a visa immediately or if he would have to wait for one to become available. [AR 716–719] Because there are a limited number of visas allocated by statute to various categories of immigrant, each petition is placed in a queue when properly filed and the date of filing serves as the applicant's priority date. Visas are then awarded sequentially as they become available. An application's position in the queue can be measured by the priority date for which visas are being awarded at any given time, information that is published monthly in the State Department's Visa Bulletin.

In the end, the IJ found (wrongly, as it turns out) that Abdelghani's priority date was not yet being awarded visas. Accordingly, he denied the motion for a continuance and required

2

Abdelghani to decide whether or not to continue pressing his application for asylum and withholding of removal. [AR 719]. After receiving a warning regarding the consequences of filing a frivolous asylum application, Abdelghani proceeded with a merits hearing, during which he testified about the persecution his family allegedly suffered in Lebanon, including the repeated bombing of the family's pharmacy, because of the family's suspected ties with Israel. [AR 720].

Ultimately, the IJ decided against Abdelghani, in large measure because of his lack of credibility. The IJ found that Abdelghani's application for asylum was untimely and that Abdelghani did not qualify for protection under the CAT because he did not demonstrate a likelihood of being tortured upon return to Lebanon. [AR 678, 687]. The IJ further determined that Abdelghani did not qualify for withholding of removal because he failed to demonstrate a clear probability of persecution based on any statutorily-protected ground. [678, 681]. Abdelghani appealed to the BIA, which dismissed his appeal in February 2008. [AR 772–73].

The next month, Abdelghani filed a motion to reopen based on ineffective assistance of counsel, arguing that the IJ erred in his determination that Abdelghani's priority date did not immediately entitle him to a visa and that, in light of that error, the IJ should reconsider his denial of the requested continuance. [AR 639]. In July 2008, the BIA granted the motion and instructed the IJ to reconsider his decision. [AR 629]. On remand, in September 2009, the IJ re-adopted his earlier finding of a frivolous asylum application based on falsehoods contained in the asylum application Abdelghani submitted in 2004, two years before the merits hearing. [AR 486–88]. The IJ went on to state that Abdelghani was ineligible to apply for adjustment of status by virtue of his earlier frivolous asylum application and ordered him removed to Lebanon. [AR 488]. Abedelghani again appealed to the BIA. [AR 428] He also filed a motion to reopen in

3

which he argued that the BIA's earlier remand had implicitly vacated the IJ's finding of a frivolous asylum application. [438–440].

On March 23, 2012, the BIA dismissed Abdelghani's appeal and denied his motion to reopen in what had become a consolidated action. [AR 362]. The BIA rejected Abdelghani's argument that it had implicitly vacated the IJ's finding of a frivolous asylum application, agreeing with the IJ that the finding of frivolousness was based on the fabrications in his 2004 application and was therefore not precluded by a separate and unrelated finding of ineffective assistance of counsel at the merits hearing of 2006, two years after the frivolous application was filed. [AR 363–64]. Following the dismissal of his appeal, Abdelghani filed two further motions to reopen in June and August of 2012. [AR 252, 8]. The BIA denied both. [AR 216, 1]. Finally, Abdelghani filed two petitions for review. The first was filed for the BIA's dismissal of his direct appeal, and the second was filed for the BIA's denial of the first of his two motions to reopen. The two petitions for review were consolidated in this appeal.

II

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). This court reviews the BIA's legal conclusions de novo while deferring "to the BIA's reasonable interpretations of the INA." *Patel v. Gonzales*, 432 F.3d 685, 692 (6th Cir. 2005). The BIA's findings of fact (including findings of frivolousness) are reviewed under the highly deferential substantial-evidence standard under which we will "uphold a BIA determination as long as it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004) (internal quotation marks omitted); *see Selami v. Gonzales*, 423 F.3d 621, 626 (6th Cir. 2005) (applying

4

substantial-evidence review to finding of frivolous asylum application). This standard does not permit reversal "simply because we would have decided the matter differently." *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008). The BIA's findings of fact are conclusive unless, "any reasonable adjudicator would be compelled to conclude to the contrary." *Ibid.* (quoting 8 U.S.C. § 1252(b)(4)(B)).

"The decision to grant or deny a motion to reopen . . . is within the discretion of the Board." 8 C.F.R. § 1003.2(a). Accordingly, the BIA's denial of a motion to reopen is reviewed for abuse of discretion. *See Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005). Under abuse of discretion, this court must decide "whether the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis . . . ." *Ibid.*

Similarly, we review an IJ's denial of a continuance for abuse of discretion because the discretion to grant a continuance is conferred upon the IJ. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006); 8 C.F.R. § 1003.29.

III

Abdelghani sets forth four claims in his appeal. First, he argues that the IJ and the BIA both erred in finding that his 2004 asylum application was frivolous. Second, he argues that his due-process rights were violated when the IJ refused to allow him to testify at the hearing on remand regarding the inconsistences that came to light in the previous merits hearing. Third, Abdelghani argues that the BIA abused its discretion in denying his motion to reopen based on allegedly new information regarding conditions in Lebanon. Finally, he claims that the IJ abused his discretion at the 2006 merits hearing by denying Abdelghani's motion for a continuance in order to apply for adjustment of status.

5

A

As indicated, the BIA agreed with the IJ's renewed finding on remand that Abdelghani filed a frivolous asylum application. The BIA and IJ's findings are supported by substantial evidence, and we affirm. [AR 363].

A finding that an application for asylum is frivolous carries dire consequences. Aliens found to have "knowingly made a frivolous application for asylum . . . shall be permanently ineligible for any benefits" under the INA. 8 U.S.C. § 1158(d)(6). So long as the alien received the statutorily required warnings, an application for asylum can be found frivolous if "any of its material elements is deliberately fabricated" but only after the alien "has had sufficient opportunity to account for any discrepancies" in the application. 8 C.F.R. § 1208.20; *see* 8 U.S.C. § 1158(d)(4)(A). We will affirm a finding of frivolousness if the following conditions are satisfied: (1) the IJ gave notice of the consequences; (2) the IJ specifically found that the alien knowingly filed a frivolous application; (3) there exists sufficient evidence in the record to support a finding that a material fact was fabricated; and (4) the IJ afforded the alien an opportunity to account for any discrepancies. *See Lazar v. Gonzales*, 500 F.3d 469, 475 (6th Cir 2007)

Substantial evidence in this case supports all four conditions. First, the IJ provided the statutorily required warning of the consequences of filing a frivolous asylum application. At the merits hearing for Abdelghani's asylum application held on June 23, 2006, the IJ explained that a frivolous application is one that "contains statements . . . that have been deliberately fabricated" and that if his application is found frivolous, he would "be barred forever from receiving any benefits under the Immigration Act." [AR 789–90]. The IJ also provided written copies of the warnings. [AR 790]. After the warnings, Abdelghani signed the application. [AR 898].

6

Second, the IJ had strong evidence on remand that Abdelghani fabricated statements in his (self-prepared) asylum application. The first was an inconsistency regarding the location of the pharmacy in the application as opposed to what he claimed in his testimony. "[T]he respondent . . . first testified that the pharmacy was in the town, that his grandfather was the mayor; and then he said, when he was confronted with his application that said he never lived in that town . . . he then suddenly moved the pharmacy to Saida . . . ." [AR 481]. Contrary to Abdelghani's claims on appeal, the bombing of the pharmacy is "certainly material to his claim." [AR 482]. In submitting his asylum application, Abdelghani attempted to show that his family was persecuted because of suspicions that they worked as spies for Israel. [AR 947]. The bombing of the pharmacy was proof offered to support that contention. After reading the application and taking testimony, the IJ determined that, "[o]bviously, he has made up, out of nothing, this pharmacy and this pharmacy incident." [AR 481] The second basis for the IJ's determination was that Abdelghani "basically confessed to lying about the pharmacy" by saying, when confronted with his inconsistencies, "just I'm doing all this because I don't want to go back." [AR 482, 760]. While the IJ might have interpreted this ambiguous statement differently, in context the interpretation was not unreasonable. The IJ's determination that Abdelghani deliberately fabricated material facts was based on substantial evidence.

Third, the IJ specifically pointed to the evidence of falsity in the record as his reason for finding the application frivolous. [AR 847–848].

Finally, the IJ was correct in determining that Abdelghani was afforded an opportunity to explain these inconsistencies. The IJ stated on remand that "the respondent certainly had sufficient opportunity to account for this discrepancy and implausible aspect of his claim." [AR 488, 697]. When the IJ discovered the inconsistency about where the pharmacy was allegedly

7

located, he provided repeated opportunities for Abdelghani to explain why he gave inconsistent statements in his application versus his testimony. [AR 758–60]. In the course of a lengthy discussion, Abdelghani changed his story twice and then made the statement that the IJ later considered to be a confession of having lied. [AR 760].

Abdelghani argues that he could not have received the requisite warning because he did not file an asylum application, but instead filed an application for withholding of removal. This argument, though clever, is unconvincing in light of the whole record. It is true that at one point during a proceeding in October 2004, the IJ refered to a continuance provided "to allow you to submit an application for the relief of withholding of removal." [AR 888]. However, that reference occurred in what was effectively no more than a calendar hearing. At the preceding hearing in July 2004, Abdelghani stated his intention to apply for "asylum, withholding, under CAT [*sic*], and in the alternative, voluntary departure." [AR 885]. And, in the following hearing, in June 2006, Abdelghani makes repeated reference to his asylum application. [AR 892, 896, 897]. The IJ even asked Abdelghani if he "filed an asylum application with the assistance of your lawyer on October 8, 2004." Abdelghani answered, "yes, your honor." [AR 897]. Despite his arguments on appeal, Abdelghani did submit an asylum application and had intended to do so all along.

Even if there is another potential reading of Abdelghani's testimony or another valid characterization of the 2004 application, the IJ's decision easily survives the requirements of substantial-evidence review, which demands that we uphold an IJ's findings "unless evidence not only supports a contrary conclusion, but indeed *compels* it." *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (internal quotation marks omitted).

8

We reject Abdelghani's due-process claim. Abdelghani is correct to point out that even an alien in a removal hearing has Fifth Amendment rights and "shall [not] be deprived of his liberty without opportunity, at some time, to be heard . . . in respect of the matters upon which that liberty depends." *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903). It is also completely true that Abdelghani was not permitted to testify on remand regarding the inconsistencies in the asylum application that was found to be frivolous by the IJ in 2006. [AR 511–31] These two facts in themselves, however, do not make out a due-process claim because the finding of frivolousness was not remanded to the IJ for reconsideration. [AR 629]

The BIA reopened Abdelghani's removal proceeding and remanded for reconsideration of only two issues: Abdelghani's claim of ineffective assistance of counsel and the IJ's earlier decision to deny a continuance because of a mistaken understanding of the Visa Bulletin as indicating that Abdelghani's priority number had not yet become eligible for a visa. [AR 629]. Despite the limited scope of the remand, Abdelghani's counsel repeatedly tried to reintroduce the subject of the inconsistencies that led to the finding of frivolousness in the 2006 hearing. [AR 521, 522–23, 529]. In the face of repeated attempts by Abdelghani to shoehorn the subject of the finding of frivolousness into the remanded question of ineffective assistance of counsel, the IJ was emphatic: "the incompetence of counsel has nothing at all do do with him. He lied in 2004 when he filed the application. And he lied at the hearing." [AR 527]. The IJ was correct to draw a sharp distinction between the potential incompetence of Abdelghani's counsel in pressing forward with an application for adjustment of status as the child of a United States citizen, and the finding of frivolousness in the 2006 hearing based on inconsistencies between Abdelghani's testimony and the information contained within his asylum application. Abdelghani could not

have had his due-process rights violated by not being allowed to testify on a subject that was not properly part of the proceedings. He, like any alien facing removal hearings, had a right to be heard. That right was made available to him and, to the extent he attempted an explanation of his inconsistent statements, he took advantage of the opportunity to explain at the merits hearing in 2006.

## C

The IJ did not abuse his discretion in refusing to grant a continuance for Abdelghani to file an application for adjustment of status at Abdelghani's 2006 asylum hearing. Moreover, even if the IJ did abuse his discretion, that determination is now immaterial because the later determination that Abdelghani had filed a frivolous asylum application renders him permanently ineligible for benefits under the INA—including adjustment of status.

An "Immigration Judge may grant a motion for a continuance for good cause shown." 8 C.F.R. § 1003.29. The decision to grant a continuance is firmly "within the discretion of the IJ." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). An IJ abuses his discretion in refusing to grant a continuance only when the denial "was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination." *Ibid*. To begin with, it is necessary to point out that merely because Abdelghani was eligible to adjust his status as the child of a United States citizen at the time of the 2006 asylum hearing, he was not in any way *entitled* to a continuance. "It cannot be the case that anytime an alien files an I-485 petition or has an I-130 petition filed on his behalf, the IJ is *required* to grant a continuance. Such a view would conflict with the discretion that the regulations explicitly provide to the IJ." *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007). The IJ provided an acceptable rationale for denying the continuance, citing the length of

time that Abdelghani's case had been pending: "well, sir, first of all, this case is over three years old. I am under an obligation to do this case by the end of June." [AR 892]. The IJ had already granted two continuances to file other applications, the first in July 2004 (when Abdelghani requested his first extension) and another in October 2004 (when he was still unprepared to file). [AR 885, 888].

The problem in this case arises because it appears from the transcript of the proceedings that the IJ denied the continuance, at least in part, because he believed that Abdelghani's priority number did not yet entitle him to a visa according to the Bulletin. The IJ and Abdelghani's counsel had a long discussion about the contents of the Visa Bulletin. [AR 893–896]. The BIA, in Abdelghani's successful motion to reopen, found that the IJ had made an "error in fact" and remanded the proceeding to the IJ for reconsideration of his decision to deny the continuance.

Whether or not previous continuances were a legitimate reason for denying another continuance, a continuance would now be unnecessary; Abdelghani's frivolous asylum application has rendered him permanently statutorily ineligible for all benefits under the INA including adjustment of status. 8 U.S.C. § 1158(d)(6); 8 C.F.R. § 1208.20; *See Alexandrov v. Holder*, 475 F. App'x 41, 46 (6th Cir. 2012) ("If an alien knowingly files a frivolous asylum application, he is statutorily ineligible for adjustment of status."). The IJ found that the asylum application was frivolous in the 2006 merits hearing. [AR 846–849]. The BIA affirmed the finding of frivolousness when it denied Abdelghani's appeal. [AR 772–73]. Even when the BIA reopened Abdelghani's case for the IJ to reconsider his denial of Abdelghani's motion for a continuance, the BIA did not vacate the finding of frivolousness—a fact reiterated by the BIA on Abdelghani's appeal from the IJ's second adverse decision: "we find no merit in the respondents contention that the Board's . . . decision 'vacated' our prior . . . decision affirming the

11

Immigration Judge's frivolous finding." [AR 629, 363]. Since the IJ's initial finding of a frivolous asylum application still stands, Abdelghani is ineligible to adjust his status. Any determination by this panel that the IJ abused his discretion in initially denying the motion for a continuance would be of no effect since Abdelghani cannot now submit an application to adjust status.

D

Finally, the BIA did not abuse its discretion in denying Abdelghani's motion to reopen removal proceedings. "The decision to grant or deny a motion to reopen or reconsider is within the discretion of the Board." 8 C.F.R. § 1003.2. Accordingly, the BIA enjoys "broad discretion" in deciding whether or not to reopen proceedings. *I.N.S. v. Rios-Pineda*, 471 U.S. 444, 449 (1985). The BIA's decision to grant or deny a motion to reopen will survive review for abuse of discretion unless the BIA's decision is, "arbitrary, irrational, or contrary to law." *Babai v. I.N.S.*, 985 F.2d 252, 255 (6th Cir. 1993). Thus a court must affirm the BIA's denial of a motion to re-open as long as the BIA provided, "a rational basis for its decision, including an explanation of any departure from established policies, and the decision [does] not rest on an impermissible basis, such as invidious discrimination." *Gor v. Holder*, 607 F.3d 180, 197 (6th Cir. 2010).

The BIA sufficiently explained its reason for denying Abdelghani's motion to reopen, finding that Abdelghani had not supported his motion with "sufficient, persuasive material evidence." [AR 218] First, the BIA found the evidence offered by Abdelghani to be unpersuasive because of the unrebutted adverse credibility findings from earlier proceedings. [AR 218]. *See Zhang v. Mukasey*, 543 F.3d 851, 854–55 (6th Cir. 2008) (stating that the BIA does not abuse its discretion by considering earlier adverse credibility determinations in later proceedings). Second, the BIA chose not to accord great weight to the affidavits of

12

Abdelghani's relatives because they were "from interested witnesses" and "speculate[d] as to the current situation in Lebanon." [AR 218]. Similarly, the BIA chose not to credit the affidavit from the alleged Mayor of the Abdelghani family's hometown as "unauthenticated" and "vague." [AR 218]. Finally, the BIA found that the Country Reports on Lebanon did not present prima facie evidence that Abdelghani "faces an individualized risk of persecution." [AR 218]. The BIA's decision was reasoned and reasonable; there was no abuse of discretion.

IV

For the reasons set forth above, we DENY Abdelghani's petition for review.

13