*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

FAUSTINO SANTANA-ALBARRAN,

*Petitioner,*

*v.*

No. 03-3472

JOHN ASHCROFT, Attorney General,

*Respondent.*

On Petition for Review of an Order of the Board of
Immigration Appeals.
No. A73 765 493.

Argued: September 21, 2004

Decided and Filed: January 10, 2005

Before: KEITH, MOORE, and GILMAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Milton A. DeJesus, Little Rock, Arkansas, for Petitioner. Anthony W. Norwood, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent. **ON BRIEF:** Milton A. DeJesus, Little Rock, Arkansas, for Petitioner. Anthony W. Norwood, Earle B. Wilson, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

KAREN NELSON MOORE, Circuit Judge. Petitioner Faustino Santana-Albarran ("Santana-Albarran") seeks review of the denial of his application for cancellation of removal and adjustment of status under § 240A(b)(1) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1229b(b)(1).[1] The Immigration Judge ("IJ") found that Santana-Albarran could prove three out of the four statutory requirements for cancellation of removal, but that he failed to establish that he had been physically present in the United States for a continuous ten-year period. The Board of Immigration Appeals ("BIA") affirmed without opinion. Santana-Albarran seeks review of the decision on two grounds: (1) that his continuous physical presence in the country had already been established in the removal hearing and should therefore have been given preclusive effect in the

---

[1]This court denied Santana-Albarran's motion for a stay of removal. The removal of an alien, however, does not moot a pending appeal. *Bejjani v. INS*, 271 F.3d 670, 688-89 (6th Cir. 2001).

subsequent cancellation hearing; and (2) that the IJ failed to give proper weight to the back tax returns he filed for the years 1987-1999, which he claims corroborate his testimony that he was present in the country during that time. Neither of these two arguments is persuasive, and therefore we **DENY** the petition for review.

## I. BACKGROUND

Santana-Albarran is a forty-two year old Mexican national who entered the United States "at an unknown location on an unknown date," without being admitted or paroled. Joint Appendix ("J.A.") at 102 (IJ Decision & Order). At his removal hearing, he testified that he had entered the country illegally several times, including in 1982, 1983, and 1985. J.A. at 112-13 (Removal Hr'g Tr.). During his time in the United States, Santana-Albarran has resided in several states, including Arizona, California, and Arkansas. On March 14, 1997, in Little Rock, Arkansas, Santana-Albarran married Catalina Carranza Duarte, who is also unlawfully present within the country. Santana-Albarran and his wife have three children, all of whom were born in the United States and are currently five, six, and twelve years old. The family resides in Little Rock, Arkansas, where Santana-Albarran worked in construction.

On October 30, 1997, the former Immigration and Naturalization Service[2] ("INS") served Santana-Albarran with a notice to appear ("NTA"), charging him with violating § 212(a)(6)(A)(i) of the INA, 8 U.S.C. § 1182(a)(6)(A)(i), which prohibits an alien from being "present in the United States without being admitted or paroled." Based on Santana-Albarran's testimony at his removal hearing, the IJ found each of the allegations in the NTA had been proven: (1) that he was not a United States citizen or national; (2) that he was in fact a Mexican citizen; (3) that he "last entered the United States in 1985 in Arizona;" and (4) that he entered without being admitted or paroled. J.A. at 115 (Removal Hr'g Tr.).

Following the IJ's ruling, Santana-Albarran applied for cancellation of removal and an adjustment of status pursuant to § 240A(b)(1) of the INA, 8 U.S.C. § 1229b(b)(1). Section 240A(b)(1) permits an immigration judge to cancel removal and to modify the status of an otherwise removable alien to a permanent resident if the alien:

(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
(B) has been a person of good moral character during such period;
(C) has not been convicted of [a specified offense]; and
(D) establishes that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

8 U.S.C. § 1229b(b)(1). The IJ found that Santana-Albarran could satisfy three of the four statutory requirements.

The IJ found that Santana-Albarran did not have a criminal violation that would fall within the statute's prohibitions and that removal to Mexico would cause "exceptional and extremely unusual hardship" to Kathy Stephanie Santana, his oldest child and a United States citizen. With regards to the good moral character requirement of the law, the IJ discovered that Santana-Albarran had not paid any income taxes since his arrival in the United States. During the approximately

---

[2]The INS no longer exists as an agency within the Department of Justice. After March 1, 2003, the Border and Transportation Security Directorate in the Department of Homeland Security ("DHS") assumed its duties pursuant to § 441 and § 471 of the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135. The abolishment of the agency and the transfer of its functions do not affect the outcome of this case.

seven-month recess before his next hearing on his cancellation application, Santana-Albarran filed federal and Arkansas tax returns for the years 1987 through 1999, and submitted them into evidence. The tax returns were "based on estimates of living expenses" because "documentary evidence of earnings was not available." *See, e.g.,* J.A. at 263 (1999 Tax Returns). While the failure to pay taxes could be sufficient to find bad character, the IJ instead commended Santana-Albarran on his efforts to make amends and pay his back taxes. In addition, the IJ found that Santana-Albarran's good moral character was proven through his involvement in community service projects, including helping with repairs at his daughter's school.

The final requirement that Santana-Albarran needed to satisfy for cancellation of removal was that he submit evidence proving he had been physically present in the United States continuously for ten years, beginning on October 30, 1987.[3] At his removal hearing, Santana-Albarran testified that he had last entered the country in 1985. J.A. at 113 (Removal Hr'g Tr.). The first documentary evidence that Santana-Albarran was actually in the United States, however, was pay stubs from an employer in Dateland, Arizona for the period of March 14-31, 1987. The next document chronologically was the result of a California driving test dated December 19, 1989. The State of California issued him a certificate of title for a car on April 10, 1991, and two identification cards in June 1990 and March 1996. Santana-Albarran also submitted rent receipts from January 1993 to November 1994 and again from January 1996 to December 1997. Thus, there existed several large gaps within the ten-year period during which Santana-Albarran could not prove through documentary evidence that he was in the United States: from October 30, 1987 to December 19, 1989; from December 19, 1989 to June 1990; from June 1990 to April 10, 1991; from April 10, 1991 to January 1993; and from November 1994 to January 1996. To prove his presence during these gaps, Santana-Albarran submitted several affidavits from acquaintances attesting to the fact that he was in the United States. None of the affidavits, however, accounted for any time prior to April 1990, and therefore, gaps still remained in the required ten-year continuous period.

Based on those gaps and the absence of any other corroborating evidence, the IJ concluded that Santana-Albarran "offers only his testimony to prove that he has been physically present in the United States for the required ten years." J.A. at 105 (IJ Decision & Order). Therefore, the IJ ruled that Santana-Albarran failed to prove a prima facie case for cancellation of removal and denied Santana-Albarran's application. On March 4, 2003, the BIA affirmed the IJ's decision without an opinion. Santana-Albarran petitioned this court for review.

## II. ANALYSIS

Before proceeding to the merits of Santana-Albarran's claims, we must first address our jurisdiction to entertain his petition for review. The INA specifically divests jurisdiction of a court to review judgments regarding the granting of discretionary relief, including the cancellation of removal. 8 U.S.C. § 1252(a)(2)(B). The denial of relief based on the ground that the alien has failed to demonstrate a continuous physical presence, however, is a non-discretionary factual determination and properly subject to appellate review. *Elnemr v. INS*, No. 02-3259, 2004 WL 515858, at *4 (6th Cir. Mar. 15, 2004); *Najjar v. Ashcroft*, 257 F.3d 1262, 1298 (11th Cir. 2001); *Escudero-Corona v. INS*, 244 F.3d 608, 612 (8th Cir. 2001); *Bernal-Vallejo v. INS*, 195 F.3d 56, 62 (1st Cir. 1999); *Kalaw v. INS*, 133 F.3d 1147, 1151 (9th Cir. 1997). *But cf. Valenzuela-Alcantar v. INS*, 309 F.3d 946, 950 (6th Cir. 2002) (concluding that the IJ's determination of the extreme-hardship issue is discretionary and thus, not subject to judicial review). Therefore, we have jurisdiction pursuant to

---

[3] Pursuant to 8 U.S.C. § 1229b(d)(1), the period of continuous physical presence is "deemed to end when the alien is served with a notice to appear." 8 U.S.C. § 1229b(d)(1). The INS served Santana-Albarran with a NTA on October 30, 1997. Therefore, to prove a prima facie case for cancellation of removal, Santana-Albarran must demonstrate his continuous physical presence within the United States for ten years preceding that date.

8 U.S.C. § 1252(a)(1), which provides generally for judicial review of all final orders of removal. "When the Board adopts the decision of the IJ in lieu of issuing its own opinion, we review the IJ's decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003).

## A.  Collateral Estoppel

The first issue which Santana-Albarran raises in his petition is that his continuous physical presence in the country had been established in the removal hearing, and therefore, the IJ erred by failing to give this finding preclusive effect in his subsequent cancellation hearing. We have held that "[t]he availability of collateral estoppel is a mixed question of law and fact which this court reviews de novo." *Hammer v. INS*, 195 F.3d 836, 840 (6th Cir. 1999), *cert. denied*, 528 U.S. 1191 (2000). Applying this standard, we conclude that the doctrine of collateral estoppel is inapplicable in this case.

The United States Supreme Court has defined the doctrine of collateral estoppel as providing that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979). The Court has applied the doctrine of collateral estoppel in the context of "an administrative agency…acting in a judicial capacity" as well. *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966). Accordingly, circuit courts have given preclusive effect to determinations made by immigration judges in immigration hearings. *See Medina v. INS*, 993 F.2d 499, 504 (5th Cir. 1993) (concluding that a prior determination that petitioner was a citizen precluded subsequent deportation proceedings, even where the first decision was based on an erroneous factual finding and understanding of the law); *Ramon-Sepulveda v. INS*, 824 F.2d 749, 750-51 (9th Cir. 1987) (holding that the INS was precluded from seeking deportation of petitioner when it failed to prove that he was an alien in a prior hearing). The fundamental purpose underlying the doctrine is "that one full opportunity to litigate an issue is sufficient." *Hammer*, 195 F.3d at 840.

Invoking the doctrine of collateral estoppel, Santana-Albarran argues that the IJ's finding in the removal hearing that "he last entered the United States in 1985" should be treated as an established fact in the cancellation hearing, and therefore, demonstrates that he has been in the country for a continuous ten-year period. J.A. at 115 (Removal Hr'g Tr.). We have stated that the doctrine of collateral estoppel applies when:

(1)  the issue in the subsequent litigation is identical to that resolved in the earlier litigation,
(2)  the issue was actually litigated and decided in the prior action,
(3)  the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation,
(4)  the party to be estopped was a party to the prior litigation (or in privity with such a party), and
(5)  the party to be estopped had a full and fair opportunity to litigate the issue.

*Verizon North Inc. v. Strand*, 367 F.3d 577, 583 (6th Cir. 2004) (quoting *Hammer*, 195 F.3d at 840). Applying the five-part test, we conclude that the doctrine of collateral estoppel is not applicable in this case.

Collateral estoppel is inapplicable because resolution of the issue of when Santana-Albarran last entered the United States was not "necessary and essential" to the judgment in the removal hearing that his presence was unlawful. The removal hearing sought to establish Santana-Albarran's current status in the country. Whether the last entry was in 1985 or 1995, the dispositive issue at the removal hearing was whether at the time he entered, whenever that might have been, did he do

so without permission. There is no time requirement that needs to be established in the removal hearing. By contrast, in the cancellation hearing, the exact date that he entered the country is critical for determining if the requisite ten-year period has been met. At the removal hearing, Santana-Albarran admitted he was a citizen of Mexico and that he entered the United States illegally. Those are the only two requirements "necessary and essential" to find that he is in violation of the law and subject to removal. The IJ's third finding, that Santana-Albarran "last entered the United States in 1985" is irrelevant to that determination, and therefore, we conclude that this finding should not be given any preclusive effect in Santana-Albarran's subsequent cancellation hearing. J.A. at 113 (Removal Hr'g Tr.).

Because the IJ's last-entrance finding in the removal hearing was not "necessary and essential" to the judgment on the merits at that hearing, we conclude that the application of the doctrine of collateral estoppel sought by Santana-Albarran is inappropriate in this case.

## B. Back Taxes as Corroborating Evidence

Santana-Albarran's second argument challenges the IJ's failure to take into account his back taxes for the years 1987-1999, which he claims corroborate his testimony that he was present in the United States during that time. An IJ's determination that an alien has failed to demonstrate a continuous physical presence is a factual finding, which we review under the substantial-evidence test. *Elnemr*, 2004 WL 515858, at *4; *Escudero-Corona*, 244 F.3d at 612; *Bernal-Vallejo*, 195 F.3d at 62; *Kalaw*, 133 F.3d at 1151. Under the substantial-evidence test, "in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed *compels* it." *Klawitter v. INS*, 970 F.2d 149, 152 (6th Cir. 1992) (emphasis in original). Congress incorporated that standard into the statutory scheme, which states that "administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). Applying this statutory standard, we conclude that the back tax returns do not compel a contrary result.

To establish a prima facie case for cancellation of removal, an alien must prove that he "has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application." 8 U.S.C. § 1229b(b)(1)(A). We agree with Santana-Albarran's claim that an illegal alien, whose manifest aim is to avoid detection, will encounter difficulty providing documentation of his continued presence within the United States for the past decade. Therefore, permissible evidence demonstrating a continuous physical presence should be broadly defined. In an analogous situation, DHS regulations state that to prove a continuing physical presence in this country, an alien may use (1) past employment records, including pay stubs, W-2 forms, certifications of the filing of income tax returns, or letters from employers; (2) utility bills; (3) school records; (4) hospital or medical records; (5) attestations by churches, unions, or other organizations; and (6) additional documents, including passport entries, birth certificates of children born in the United States, letters or correspondence, contracts, government-issued identification cards, or any other relevant document. 8 C.F.R. § 245a.2(d)(3).[4] The BIA has stated that though the "regulations provide an illustrative list of contemporaneous

---

[4]The regulation cited above pertains to § 245A of the INA, which provides for the adjustment of the status of an unlawful alien to that of person admitted for lawful residence, provided the alien can show continuous unlawful residence in the United States since 1982. 8 U.S.C. § 1255a(a)(2)(A). There is no parallel or similar regulation applicable to cancellation of removal and adjustment of status under § 240A of the INA. Because both provisions contain a continuous-physical-presence requirement, however, the regulation detailing how an alien may demonstrate that presence would be applicable to claims under both provisions. *Compare* 8 U.S.C. § 1255a(a)(2)(A) *with* 8 U.S.C. § 1229b(b)(1)(A). Indeed, the IJ relied on a § 245A case in evaluating Santana-Albarran's evidence of a continuous physical presence. J.A. at 105 (IJ Decision & Order (citing *In re E-M-,* 20 I. & N. Dec. 77 (1989))).

documents," an applicant may also submit "affidavits and '[a]ny other relevant document.'" *In re E-M-,* 20 I. & N. Dec. 77, 82-83 (1989) (alteration in original). In that case, *In re E-M-,* the alien, who overstayed his visitor visa, submitted his INS application, his passport indicating when he entered the country, and affidavits from acquaintances stating that they knew him for the entire statutorily-required period. *Id.* at 83. The BIA concluded that the applicant had proven by a preponderance of the evidence that he was continuously present in the country for the requisite time period. *Id.*

By contrast, in this case, the IJ found that Santana-Albarran has not proven he was present in the country continuously from October 30, 1987 to October 30, 1997. Specifically, the evidence he submitted contains gaps in excess of 90 days, which therefore destroy continuity. 8 U.S.C. § 1229b(d)(2). Santana-Albarran cannot demonstrate that he was in the country during these gaps other than through his own oral testimony. To corroborate these claims, he has submitted his income tax returns for the years 1987-1999, which he filed well after the tax years in question and after the removal order was entered, at the insistence of the IJ. J.A. at 187 (Nov. 1999 Cancellation Hr'g Tr.). All the tax returns were filed on May 15, 2000, and were "based on estimates of living expenses" because "documentary evidence of earnings are [sic] not available." *See* J.A. at 263 (1999 Tax Return). All the state tax returns were filed with the State of Arkansas, his current residence, despite the fact that he had not moved there until 1995, and therefore, did not owe any taxes to Arkansas prior to that date. We agree with the Government that "properly executed, contemporaneously filed income tax returns reflecting steady employment as evidenced by attached W-2 forms or other corroborating evidence of employment would go a long way in establishing continuous physical presence." J.A. at 85 (Resp. BIA Reply Br.). The tax returns which Santana-Albarran has submitted, however, are unsupported by W-2 forms or other proof of actual employment, and therefore cannot serve to corroborate his own testimony.

Santana-Albarran argues that the back tax returns are reliable because "no one is going to hang a large tax liability around his or her neck unless the tax is owed." Pet. Br. at 16. Analogizing to the Federal Rules of Evidence, he states that filing the tax returns is a statement against interest and therefore is credible proof that he was in the country during those times. Pet. Br. at 17; Fed. R. Evid. 804(b)(3). We find this argument to be wholly unpersuasive. One would certainly "hang a large tax liability around his or her neck" if it means that one could avoid removal from the country, as was evidenced by the fact that these returns were filed in the first place only in response to the IJ's concern. Santana-Albarran even stated in his cancellation hearing that he would pay his taxes if it would clarify his status in the country. That he is paying taxes which are not even owed to the State of Arkansas further undercuts his argument. Therefore, we conclude the back tax returns, obligating Santana-Albarran to approximately $40,000 in tax liability, demonstrate his strong desire to avoid removal, but do not compel the contrary conclusion of a continuous physical presence within the United States during the required ten-year period.

### III. CONCLUSION

In conclusion, we hold that the IJ's last-entrance finding in the removal hearing should not be given preclusive effect in the subsequent cancellation hearing and that the filing of unsupported back tax returns fails to compel acceptance of Santana-Albarran's claim of a continuous physical presence. Therefore, we **DENY** the petition for review.