**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0704n.06

No. 09-3686

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Nov 12, 2010**
LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| JOSE OSCAR GALVAN, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | FROM THE BOARD OF |
| | ) | IMMIGRATION APPEALS. |
| v. | ) | |
| | ) | |
| ERIC H. HOLDER, JR., | ) | **O P I N I O N** |
| | ) | |
| Respondent. | ) | |
| | ) | |

**BEFORE:  NORRIS, ROGERS, and WHITE, Circuit Judges.**

**HELENE N. WHITE, Circuit Judge.**  Petitioner Jose Oscar Galvan (Galvan) appeals the Board of Immigration Appeals (BIA) denial of his application for Cancellation of Removal (COR). We **DENY** the petition for review.

I.

Galvan, a thirty-six-year-old Mexican native and citizen who resides in Nashville, Tennessee, crossed the border without inspection from Mexico into Phoenix, Arizona in 1997.  Galvan testified that he moved from Phoenix to Los Angeles, and then to Chicago, before settling in Tennessee.  On April 30, 2007, after he was arrested in Tennessee on a minor driving offense, the United States presented Galvan with a Notice to Appear in removal proceedings.  Galvan conceded his removability, but filed an application for COR in May, 2008.

To make out a *prima facie* case for COR, a petitioner must establish his continuous physical presence for ten years or more in the United States, prior to filing the COR application. This continuous period is cut off when the United States begins removal proceedings. 8 U.S.C. § 1229b(b)(1)(A).[1] In order for Galvan to fulfill the ten-year requirement, therefore, he must show that he was present in the United States on or before April 30, 1997.

The record contains conflicting evidence regarding the precise date on which Galvan arrived in the United States. An INS Form I-213 (Record of Deportable/Inadmissible Alien) dated April 29, 2007, reports that Galvan told the Immigration and Customs Enforcement (ICE) official who interviewed him that he "entered the U.S . . . on July 08, 1997." However, on July 11, 2008, Galvan testified at his removal hearing that he actually arrived in the United States on April 12 or 13, 1997, and that he had given the incorrect July date to the ICE official because he was "nervous" and not "fully conscious of my five senses" during the interview. Other than his own testimony at the removal hearing, Galvan did not provide additional witnesses or documentary evidence (pay stubs, bank statements, medical records, residential lease, etc.) placing him in the United States before July, 1997, nor did he provide a street address for any residence at which he stayed while living in Los Angeles. There is documentary evidence – including a certificate of title for an automobile and a

---

[1] 8 U.S.C. § 1229b(b)(1)(A) states:
(b) Cancellation of removal and adjustment of status for certain nonpermanent residents
(1) In general
The Attorney General may cancel removal of, and adjust to the status of an alien lawfully admitted for permanent residence, an alien who is admissible or deportable from the United States if the alien--
(A) has been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application.

signed letter from Galvan's parish priest – establishing his presence in the United States from July,

1997 on. When the Immigration Judge (IJ) asked Galvan why he could not provide documentation

of his presence in Los Angeles in April 1997, Galvan replied that he had no pay stubs or bank

account because he had been paid in cash as a contract worker, and that he had not signed a lease.

Galvan brought one witness with him to the hearing, but conceded that that witness had only known

him since 2002. Galvan alleged that a second witness was unable to attend because of a canceled

flight, but conceded that that witness would not be able to place him in the United States on or before

April 30, 1997.

At one point during Galvan's direct examination at the removal hearing, and after discussion

of the date of his arrival in the United States, the IJ interjected:

> JUDGE TO [GALVAN'S ATTORNEY]: Let me stop the testimony at this point.
> We have a threshold issue.
> [GALVAN'S ATTORNEY] TO JUDGE: Correct.
> JUDGE TO [GALVAN'S ATTORNEY]: If we were in Federal Court, there would
> be 12 B 6 motion right about now, a motion to pretermit in Immigration parlance.
> Do you have a witness that you say can place the respondent in the United States at
> this time?

Galvan's attorney consulted with Galvan and responded that they did not have such a witness.

Shortly thereafter, the IJ also stated that unless Galvan could show appropriate documentation, or

present appropriate witnesses establishing his presence for ten years, the IJ "might entertain a motion

from the Government to pretermit." Not long after, the Government moved that the application be

pretermitted on the basis that Galvan was "not statutorily eligible for cancellation" based on his

failure to demonstrate ten years' presence in the United States, which the IJ granted.

On July 11, 2008, the IJ denied Galvan's application for COR, relying on *Santana-Albarran v. Ashcroft*, 393 F.3d 699 (6th Cir. 2005), for the proposition that an IJ could reasonably expect the corroboration of ten years' of presence in the form of documentary evidence, and finding that because there were no "reliable documents" or witnesses in the record to support Galvan's contention that he had been present in the United States in April, 1997, and because Galvan himself had initially claimed that he arrived in the United States in July rather than April of 1997, Galvan had not met his burden of proof with respect to the ten-year continuous-presence requirement for COR. The IJ also overruled Galvan's objections to the admittance of the I-213 as evidence. Galvan had argued that the form should not be admitted because it was not authenticated and he did not "know that the person who signed it was actually the signer," and on the grounds of hearsay. The IJ held that the form "merely memorialized testimony which respondent gave to an Immigration Officer and which he repeated in this Court, but the I-213 stands separate from respondent's inability to meet his burden of proof." The IJ granted Galvan voluntary departure up to and including September 9, 2008.

Galvan timely appealed the IJ's decision denying his application for COR to the BIA, arguing that: (1) the IJ failed to give proper weight to Galvan's testimony; (2) the IJ improperly violated his due process rights by relying on inherently unreliable hearsay, i.e., the I-213 Form; and, (3) the BIA was deprived of a meaningful opportunity to review the proceedings because of the incomplete transcript.[2]

---

[2]The removal hearing transcript has a significant number of instances where part or all of Galvan's responses to questions are marked "indiscernible."

The BIA dismissed Galvan's appeal on May 13, 2009. First, the BIA held that although the transcript of the removal hearing "shows numerous areas in the respondent's testimony that are indiscernible from the tape of the proceedings," a review of the entire transcript shows that neither the parties nor the BIA were deprived of a meaningful review of the proceedings. The BIA held that this was true of the parties because Galvan's attorney before the BIA also represented him before the IJ "and heard the questions and the respondent's testimony first-hand." The BIA then held that this was true for the BIA as well because, "even though the transcript is flawed, it is sufficient for the Board to review the proceedings. There has been no specific dispute as to the critical findings of the Immigration Judge from that testimony." Specifically, the BIA found that, as regards the central question whether Galvan had been in the United States ten years, the transcript showed that Galvan testified he had entered the United States on either April 12 or 13, that he first went to Phoenix and then arrived in Los Angeles on April 14, that he lived there until July 11, 1997, but could not remember his address or provide any documentation to support those dates, that he then moved from Los Angeles to Chicago by plane but had no documentation of that move, that he had told the immigration agent that he entered the United States on July 8, 1997, that the witness who had come to the hearing on Galvan's behalf could only testify to his presence beginning in 2002, and that he had not arranged for any other witnesses that could testify to his presence in the United States before April 30, 1997.

Second, the BIA held that the IJ did not commit error in relying on the information contained in the I-213 because Galvan admitted that he provided the immigration officer with a date of July 8, 1997, which was then included in the I-213.

Third, the BIA affirmed the IJ, holding that Galvan did not qualify for COR "because he failed to show that he has the requisite period of continuous physical presence" required by 8 U.S.C. § 1229b(b)(1)(A). In support of this decision, the BIA noted that in light of Galvan's lack of documentary evidence or witnesses to support his testimony regarding his arrival in the United States in April, 1997, his own testimony about his arrival date at the removal hearing was not reliable. The BIA subsequently ordered that Galvan be permitted to voluntarily depart the United States within sixty days from the date of the order "or any extension beyond that time as may be granted by the Department of Homeland Security," "conditioned upon compliance with conditions set forth by the Immigration Judge and the statute." The BIA's order included a warning that: "If, prior to departing the United States, the respondent files any judicial challenge to this administratively final order, such as a petition for review pursuant to section 242 of the Act, 8 U.S.C. § 1252, the grant of voluntary departure is automatically terminated, and the alternate order of removal shall immediately take effect."

Galvan timely petitioned for review of the BIA's order in the Sixth Circuit. On June 29, 2009, he moved for a stay of removal and, concurrently, for either a stay of voluntary departure or a reinstatement of voluntary departure *nunc pro tunc*. On October 26, 2009, a motions panel of this Circuit granted Galvan's motion for stay of removal, but referred the motion for a stay of voluntary departure to the merits panel.

**II.**

Where the BIA issues an opinion separate from that of the IJ, we review the BIA's decision as the final agency determination. However, we also review the IJ's decision to the extent the BIA

adopted it. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). This Court reviews *de novo* claims asserting due process violations in removal hearings. *Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998).

Galvan argues that various errors committed by the IJ and BIA deprived him of due process. "An alien must establish both error and substantial prejudice to prevail on a due process challenge to deportation proceedings." *Garza-Moreno v. Gonzales*, 489 F.3d 239, 241 (6th Cir. 2007) (internal quotations omitted). Not every error in a removal proceeding implicates the Fifth Amendment. "[A] defect must have been such as might have led to a denial of justice to trigger due process concerns." *Id.* (internal quotations omitted). Either because there was no error, or because any alleged error did not produce substantial prejudice, none of the alleged errors violated Galvan's right to due process.

## A.

Galvan first argues that he was deprived of due process by the IJ's consideration of the I-213 form because: (1) the IJ failed to consider the "unfair or coercive manner in which the information on Form I-213 was collected"; (2) the IJ did not allow for cross-examination of the ICE official who prepared the form; and, (3) the IJ improperly gave more weight to the information in the I-213 form than to Galvan's testimony.

We need not engage in a lengthy discussion of these claims because even if Galvan could show error in the admission of the I-213, he cannot show prejudice. The Government did not need to rely on the I-213 to introduce the conflicting July date because Galvan acknowledged at the hearing before the IJ that he gave the Immigration Officer an entry date of July 8, 1997. That testimony undermines Galvan's second and third claims of error, as well as his subclaims based on

hearsay and the failure to authenticate the I-213. *See Walker v. Ashcroft*, 54 F. App'x 438, 440-41 (6th Cir. 2002) (relying on I-213 where petitioner gives "no reason to doubt the correctness of the information contained in the court records and the I-213 form"). Further, there is no evidence the I-213 form is a forgery or has been tampered with in any way. *See Lici v. Mukasey*, 258 F. App'x 845, 848 (6th Cir. 2007) ("Authentication is not an issue as there is no evidence the report is a forgery.").[3]

Additionally, neither the IJ nor the BIA relied solely, or even primarily, on the I-213 divorced from Galvan's testimony. The IJ held that "the I-213 stands separate from respondent's inability to meet his burden of proof." Similarly, the BIA premised its affirmance on "the conflicting dates the respondent has provided as his date of entry, and the lack of documentary evidence that he was present in the United States on or before April 30, 1997."

Regarding his first claim of error, Galvan concedes that "[f]orm I-213 is regularly admitted into evidence as the sole means of proof of removability." However, he argues that admitting the form in his particular case violated due process because the IJ did not consider "the unfair or coercive manner in which this information on the I-213 was collected."

"Evidentiary matters in immigration proceedings . . . are not subject to the Federal Rules of Evidence, and we review evidentiary rulings by IJs only to determine whether such rulings have

---

[3]The BIA observed that "because the respondent has admitted that he provided the date of July 8, 1997, to the Immigration [O]fficer, who then filled it in on the Form I-213, the challenge of the entry of such documentary evidence on the basis that it has not been authenticated is without merit."

resulted in a violation of due process." *Singh v. Ashcroft*, 398 F.3d 396, 406-07 (6th Cir. 2005) (internal citation omitted). The IJ "may receive in evidence any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person during any investigation, examination, hearing, or trial." 8 C.F.R. § 1240.7(a). "[T]he test for admissibility of evidence [in the immigration context] . . . is whether the evidence is probative and whether its use is fundamentally fair." *Alexandrov v. Gonzales*, 442 F.3d 395, 404-05 (6th Cir. 2006) (citing *Ezeagwuna v. Ashcroft*, 325 F. 3d 396, 405 (3d Cir. 2003)). "The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence, who must come forward with enough negative factors to persuade the court not to admit it." *Espinoza v. I.N.S.*, 45 F.3d 308, 310 (9th Cir. 1995); *see also id.* ("Th[e burden] rule is premised on the assumption that public officials perform their duties properly without motive or interest other than to submit accurate and fair reports. Another consideration is the great inconvenience that would be caused to public business if public officers had to be called to court to verify in person every fact they certify." (internal citations and quotations omitted)).

Galvan suggests through rhetorical questions that the IJ should have considered whether the I-213 was produced in a coercive manner. Galvan did not raise this claim to the BIA and submitted no evidence of coercion. Rather, this "coercion" element of his due process argument seems to rely solely on the assertion that he was nervous during the I-213 interview. Galvan was permitted to testify to the circumstances surrounding the I-213 interview. That he testified to being nervous does not render the I-213 so inherently unreliable as to compel its exclusion. *In re Ponce-Hernandez*, 22 I. & N. Dec. 784, 785 (B.I.A. 1999) ("It has been held that absent any evidence that a Form I-213

contains information that is incorrect or was obtained by coercion or duress, that document is inherently trustworthy and admissible as evidence to prove alienage or deportability."); *see also Murdock v. Attorney General of U.S.*, 131 F. App'x 360, 361 (3rd Cir. 2005) (citing *In re Ponce-Hernandez*, 27 I. & N. Dec. at 785). Rather, it was for the IJ to determine, based on the entire record, whether Galvan's nervousness and anxiety adequately explained his providing the Immigration Officer with the July date. The IJ did not reject Galvan's account of his state of mind during the interview; he was simply unpersuaded that his state of mind accounted for the asserted error. Galvan has shown no prejudice from his inability to cross-examine the Immigration Officer.

Galvan further argues that "[o]nce the IJ admitted the Form I-213, he should not have afforded greater weight to it than the in-court witness (the Petitioner) and over to [*sic*] the objections of the respondent." As noted above, however, the IJ's holding that Galvan was not eligible for COR was not premised on the date contained in the I-213, but on Galvan's failure to satisfy his burden of proof in light of all the evidence presented.

B.

Galvan argues that his right to due process was violated because the IJ did not make an adverse credibility finding with respect to Galvan, and therefore should have accepted Galvan's testimony during his removal hearing as sufficient without additional corroboration. Galvan also argues that the IJ and BIA held him to the wrong legal standard of corroboration – they erroneously employed the standard found in *Santana-Albarran v. Ashcroft*, rather than INA § 240(c)(4)(B) [8 U.S.C. § 1229a(c)(4)(B)]. We read the record differently.

INA § 240(c)(4)(B) is an amendment to the INA pursuant to the REAL ID Act (effective on May 11, 2005), which would allow Galvan's testimony to suffice as evidence that he was continuously present for ten years provided he could also show that he could not reasonably obtain supporting documentary evidence. Galvan argues that the IJ interpreted *Santana-Albarran* to mean that those corroborating documents were required, and did not realize he had discretion.

Galvan correctly argues that 8 U.S.C. § 1229a(c)(4)(B) applies to issues of the sufficiency of corroborative evidence in removal proceedings. That statute states in pertinent part:

> In evaluating the testimony of the applicant or other witness in support of the application, the immigration judge will determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof. In determining whether the applicant has met such burden, the immigration judge shall weigh the credible testimony along with other evidence of record. Where the immigration judge determines that the applicant should provide evidence which corroborates otherwise credible testimony, such evidence must be provided unless the applicant demonstrates that the applicant does not have the evidence and cannot reasonably obtain the evidence.

8 U.S.C. § 1229a(c)(4)(B).

This Court construed the post-REAL ID Act standard for corroborating evidence in immigration proceedings in *Urbina-Mejia v. Holder*, 597 F.3d 360 (6th Cir. 2010). Urbina-Mejia's claim for withholding of removal had been denied in part because he failed to provide corroborating evidence. *Id*. at 362. This court found that the IJ and BIA did not err in finding that the petitioner had failed to corroborate his credible testimony with available evidence, noting:

> This court is bound by the REAL ID Act of 2005 and may not reverse an agency finding as to the availability of corroborating evidence "unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable."

597 F.3d at 367 (quoting *Fisenko v. Holder*, 336 F. App'x 504, 513 (6th Cir. 2009)). *Urbina-Mejia* confirmed that the REAL ID Act allows IJs to "determine[] that an applicant should provide corroborating evidence, even if the applicant is found credible." *Id.* As in *Urbina-Mejia*, Galvan "has failed to show that his testimony must be found sufficient to sustain his burden of proof without corroboration merely because it *may* do so when no corroborating evidence is available." *Id*. at 368 n.4 (emphasis added).

Moreover, although *Santana-Albarran* was a pre-REAL ID Act case, the IJ's references to that case for types of corroborative documentary evidence does not render this post-REAL ID Act decision unsound. In *Santana-Albarran*, the petitioner, a Mexican national who applied for COR, claimed the IJ did not give sufficient weight to back tax returns (filed long after the applicable tax years and without W-2 forms) that he used to corroborate his testimony that he had been continuously present in the United States for ten years. 393 F.3d at 706. The *Santana-Albarran* court stated:

> [P]ermissible evidence demonstrating a continuous physical presence should be broadly defined. In an analogous situation, DHS regulations state that to prove a continuing physical presence in this country, an alien may use (1) past employment records, including pay stubs, W-2 forms, certifications of the filing of income tax returns, or letters from employers; (2) utility bills; (3) school records; (4) hospital or medical records; (5) attestations by churches, unions, or other organizations; and (6) additional documents, including passport entries, birth certificates of children born in the United States, letters or correspondence, contracts, government-issued identification cards, or any other relevant document.

*Id.* at 705. *Santana-Albarran*'s recitation of the types of documentary evidence that can be used to corroborate an alien's testimony regarding his continuous physical presence claim is still relevant after passage of the REAL ID Act. And it was to that standard that the IJ was referring when he

stated: "The Immigration Judge would have expected documents of a reliable nature, such as those set forth in *Santana-Albarran*, *supra*, to establish the 10-year presence."

It is the IJ's task to determine – apart from his credibility finding – whether Galvan's explanation for his lack of corroborating evidence is reasonable, and the IJ's use of *Santana-Albarran* to do so was not error.

Troubling, however, is that the transcript of the removal hearing does indicate that it is possible that the IJ erroneously believed the *Santana-Albarran* documentation was required, as opposed to optional:

> Sir, let me explain your legal situation. You have to prove, prove, that you were physically present in the United States before April 30, 1997. And the case law involving that requires reliable proof in the form of the kind of documents that your lawyer asked you about earlier.

Although the IJ's order is more ambiguous as to whether he believed such documentation was required, even assuming the IJ erred, the BIA made an independent finding that "the respondent's testimony regarding his April 1997 arrival date is not a reliable statement and not sufficient evidence of his date of entry . . . ." Therefore, any error by the IJ does not compel reversal.

## C.

Galvan argues that the IJ's suggestion that the Government file a motion to pretermit violated his right to due process, and that this suggestion prejudiced Galvan since the case was ultimately pretermitted.

Although "[a] neutral judge is one of the most basic due process protections," *Reyes-Melendez v. I.N.S.*, 342 F.3d 1001, 1006 (9th Cir. 2003), IJs have broad discretion in conducting their

hearings. *Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005). Among the IJ's statutorily conferred powers are those to "administer oaths, receive evidence, and interrogate, examine, and cross-examine the alien and any witnesses." 8 U.S.C. § 1229a(b)(1). However, "[a]n immigration judge has a responsibility to function as a neutral, impartial arbiter and must refrain from taking on the role of advocate for either party." *Elias v. Gonzales*, 490 F.3d 444, 451 (6th Cir. 2007). The BIA has stated:

> An IJ must be impartial and must not attempt to establish proof to support the position of any party to the controversy; once he does so he becomes an advocate or a participant, thus ceasing to function as an impartial trier of fact, and a hearing so conducted is lacking in the fundamental fairness required by due process.

*Vasha v. Gonzales*, 410 F.3d 863, 872-73 (6th Cir. 2005) (quoting *Matter of Lam*, 14 I. & N. Dec. 168, 170 (B.I.A. 1972)).

At one point during Galvan's removal hearing, as he was providing testimony, the IJ stated: "Let me stop the testimony at this point. We have a threshold issue." He then stated: "If we were in Federal Court, there would be a 12 B 6 motion right about now, a motion to pretermit in Immigration parlance." A short while later he stated that unless Galvan had documents to show he had been in the country for the requisite ten years he "might entertain a motion from the Government to pretermit."

Notwithstanding the IJ's invitation to the Government, Galvan had ample opportunity to present evidence of his presence in the country for the requisite ten-year period, but was still unable to do so. He has not shown substantial prejudice from the IJ's actions. *See Campos v. I.N.S.*, 16

F.3d 118, 122 (6th Cir. 1994) (abbreviated hearing did not violate due process where petitioner was statutorily barred from discretionary waiver and "had ample opportunity to address the issue").

D.

Galvan argues that the extensive "indiscernible" notations throughout the transcript from the removal hearing violated his rights to due process. The removal hearing transcript contains many instances in which Galvan's responses to questions are marked either partially or completely "indiscernible," including his answers to questions such as: "Where did you work in Los Angeles as a contract worker?"; "[W]hy did you tell them that day that you came in April?"; "[W]hy did you tell the ICE agent you arrived on July 8?"; and "Did you understand the ICE Agent's question when he asked you or she asked you what date did you enter the United States?"  However, the flawed transcript does not rise to the level of a due process violation, because Galvan has not indicated how the incomplete transcript prejudiced his case.

In *Garza-Moreno v. Gonzales*, this Court held that a removal hearing transcript that contained "sixty-seven 'indiscernible' notations" did not violate the alien petitioner's right to due process under the Fifth Amendment.  489 F.3d 239, 241-42 (6th Cir. 2007).  This Court has noted, citing 8 U.S.C. § 1229a(b)(4)(C),[4] that the government has an "obligation to prepare a reasonably accurate and complete record of the removal hearing," *Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006), but has also held that an error in a transcript, standing alone, does not trigger a due process violation

___

[4] 8 U.S.C. § 1229a(b)(4)(C) states:  "[A] complete record shall be kept of all testimony and evidence presented at the proceeding."

without a concomitant showing that the transcript's flaws affected the outcome of the case. *Abdulahad v. Holder*, 581 F.3d 290, 296 (6th Cir. 2009) (petitioner failed to establish a violation of due process based solely on the fact that portions of his removal hearing transcript were marked "indiscernible"); *Soumare v. Holder*, 343 F. App'x 75, 83-84 (6th Cir. 2009) (petitioner's right to due process was not violated by the admission of a transcript with numerous "indiscernible" notations because petitioner "has not identified how the 'indiscernibles' in the hearing transcript prejudiced his ability to perfect an appeal").

In the instant case, the primary issue with which the IJ and the BIA were concerned was whether Galvan could fulfill the ten-year continuous-presence factor required for a *prima facie* claim of COR. The transcript reflects – and Galvan does not dispute – that Galvan: (1) reported that he arrived in Los Angeles on April 14, 1997; (2) had previously told the ICE officer who filled out his I-213 form that he arrived on July 8, 1997; (3) brought no witnesses to his removal hearing who could testify to his presence in the United States before April 30, 1997; and (4) had no documentary evidence to corroborate his testimony that he arrived in the United States in April, 1997. These undisputed facts alone provided the IJ and the BIA with sufficient evidence to determine that Galvan failed to meet his burden of proof on the ten-year continuous-presence prong of his COR claim. While Galvan's removal hearing transcript is unquestionably patchy, this does not bear on the outcome of his case: he neither indicates specific, material facts that were omitted from the transcript, nor argues that the IJ or the BIA misinterpreted the transcript because of its many "indiscernible" notations. As the BIA observed, the same attorney represented Galvan at the hearing and on appeal, and was present to hear the testimony, even the testimony that was not adequately

transcribed. Thus, we find that the incomplete transcript did not prejudice Galvan and, therefore, did not violate his right to due process.

E.

Galvan argued in a motion to this Court that he should be granted a stay of voluntary departure. At oral argument, however, he conceded that he automatically lost his voluntary departure status by filing this appeal. 8 C.F.R. § 1240.26(i)[5]. We therefore lack jurisdiction to consider a motion to stay.

**III.**

Based on the foregoing, we **DENY** the petition for review.

---

[5]8 C.F.R. § 1240.26(i) states:

Effect of filing a petition for review. If, prior to departing the United States, the alien files a petition for review pursuant to section 242 of the Act (8 U.S.C. 1252) or any other judicial challenge to the administratively final order, any grant of voluntary departure shall terminate automatically upon the filing of the petition or other judicial challenge and the alternate order of removal entered pursuant to paragraph (d) of this section shall immediately take effect . . . .