**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 16a0296n.06

**Case No. 15-3940**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ANTONIO CRUZ-CARRILLO, | ) | **FILED**<br>Jun 03, 2016<br>DEBORAH S. HUNT, Clerk |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) | ON PETITION FOR REVIEW |
|  | ) | FROM THE UNITED STATES |
|  | ) | BOARD OF IMMIGRATION |
| LORETTA E. LYNCH, U.S. Attorney General, | ) | APPEALS |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |
|  | ) | O P I N I O N |

BEFORE:   COLE, Chief Judge; McKEAGUE and GRIFFIN, Circuit Judges.

COLE, Chief Judge.  Antonio Cruz-Carrillo, a native and citizen of Guatemala, petitions for review from a decision of the Board of Immigration Appeals ("BIA") denying his applications for withholding of removal and protection under the Convention Against Torture ("CAT").  Cruz-Carrillo says he fears violence at the hands of Guatemalan government soldiers, who have previously attacked him, either because he refused to join their ranks or because they suspected him of aiding rebel guerrillas.  The BIA found that Cruz-Carrillo had not sufficiently established a nexus between his political neutrality during the Guatemalan civil war and the soldiers' attacks, or shown that he likely faced persecution or torture upon his return.  Because the BIA's decision was supported by substantial evidence, we deny the petition.

## I. Background

Cruz-Carrillo was born in Guatemala in 1976. From about 1960 to 1996, Guatemala suffered a civil war. His family was neutral in the civil war, but lived in Todos Santos, a town in a part of the country considered to be a stronghold for the rebel guerrillas. He fled to the United States to escape violence at the hands of government soldiers, and fears similar violence in the future.

In 1982, government soldiers attacked Cruz-Carrillo's family because the family refused to join the soldiers in their fight against the guerrillas. Only seven years old, Cruz-Carrillo watched as his family was beaten, his mother and sister raped. The family then moved to a different area of Guatemala for nine years, but returned to Todos Santos in September 1991. The day the family returned, government soldiers appeared at their home and accused the family of supporting the guerrillas. The soldiers once again beat the family, raped his mother and sister, and then executed his sister.

After this incident, Cruz-Carrillo fled to the United States. He arrived in 1992 and filed an application for asylum in 1993. The Immigration and Naturalization Service ("INS") denied his asylum application, but he remained in the United States.

Cruz-Carrillo returned to Guatemala in 1997 to care for his ill mother. A few days later, he was kidnapped and severely beaten by government soldiers who believed he had joined the guerrillas. He spent several days in the hospital. When his father tried to report this incident to the police, they told him to stop "causing problems."

Cruz-Carrillo returned to the United States as soon as he recovered. Because his asylum application had been denied, he was placed into removal proceedings. An Immigration Judge ("IJ") denied his application for cancellation of removal, and he was removed in March 2012.

Less than two weeks after being removed to Guatemala, Cruz-Carrillo was once again attacked by government soldiers who accused him of being a guerrilla. They broke into his house, this time wearing masks to hide their identities, where they beat and stabbed Cruz-Carrillo, leaving him for dead. He survived after spending over a week in the hospital. Once again, his father tried to report this incident to the police, but they refused to help.

Within a few months of leaving the hospital, Cruz-Carrillo unlawfully reentered the United States. Since reentering, his parents have told him that government soldiers have twice come to their home looking for him.

Cruz-Carrillo was apprehended by the Department of Homeland Security in December 2014, which sought to reinstate the IJ's 2012 removal order. He applied for withholding of removal and protection under the CAT, arguing that he feared government soldiers would continue to harm him if he returned to Guatemala.

An IJ held an evidentiary hearing at which Cruz-Carrillo was the sole witness. On May 11, 2015, the IJ denied Cruz-Carrillo's application. First, the IJ found Cruz-Carrillo's testimony not credible due to inconsistencies in his testimony and written application. Second, the IJ found that even if Cruz-Carrillo were credible, he had failed to establish a nexus between the attacks and his political neutrality. Third, the IJ found that the end of the Guatemalan civil war had worked a fundamental change in the country, and that its government no longer conducts politically-motivated killings or disappearances. Finally, the IJ found that Cruz-Carrillo failed to show he would likely be subject to government-sanctioned torture.

The BIA affirmed the IJ's decision. The BIA did not address the IJ's credibility finding, and instead decided that he had not proved his case "even if his claims were accepted as credible." The BIA was "not persuade[d]" that Cruz-Carrillo's "claimed political opinion, i.e.,

remaining neutral during and after the Guatemalan civil war, is a central reason for the claimed harm." Furthermore, the BIA found that changed country circumstances "do[] not indicate that politically neutral individuals are targeted for persecution in Guatemala" today. With respect to the CAT claim, the BIA found no "persuasive reason why anyone in Guatemala would seek to harm him in a manner amounting to torture."

The order of removal was therefore reinstated. On September 1, 2015, a panel of this court denied his motion for a stay of removal. Cruz-Carrillo has since been removed to Guatemala. Despite his removal, his case is not moot and we retain jurisdiction to hear his appeal. *Garcia-Flores v. Gonzales*, 477 F.3d 439, 440 n.1 (6th Cir. 2007) (citing *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 701 n.1 (6th Cir. 2005)).

## II. Analysis

"Because the BIA did not summarily affirm or adopt the IJ's reasoning and provided an explanation for its decision, we review the BIA's decision as the final agency determination." *Young Hee Kwak v. Holder*, 607 F.3d 1140, 1143 (6th Cir. 2010) (quoting *Ilic-Lee v. Mukasey*, 507 F.3d 1044, 1047 (6th Cir. 2007)). We review the BIA's factual findings "[u]nder the deferential substantial evidence standard." *Khozhaynova v. Holder*, 641 F.3d 187, 191 (6th Cir. 2011). The BIA's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *Yu v. Ashcroft*, 364 F.3d 700, 702–03 (6th Cir. 2004).

To qualify for CAT protection, the applicant must show it "is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). The BIA denied Cruz-Carrillo's application for protection under the CAT. Cruz-Carrillo did not address his CAT claim in his brief to this court, however, and has therefore

forfeited it. *See Hih v. Lynch*, 812 F.3d 551, 556 (6th Cir. 2016). We will accordingly only consider his claim for withholding of removal.

Withholding of removal requires an applicant to prove that, more likely than not, he faces persecution on one of five protected grounds: race, religion, nationality, social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Almuhtaseb v. Gonzales*, 453 F.3d 743, 749 (6th Cir. 2006). Here, Cruz-Carrillo claims the soldiers persecuted him either because of his political opinion of neutrality, or because they incorrectly believed he supported the guerrillas. Credible evidence of past persecution on a protected basis creates a rebuttable presumption of future persecution. 8 C.F.R. § 208.16(b)(1)(i).

An adverse credibility determination is fatal to a claim for withholding of removal. *Slyusar v. Holder*, 740 F.3d 1068, 1072, 1074 (6th Cir. 2014). While the IJ found Cruz-Carrillo not to be credible, this was not the basis for the BIA's decision. Instead, the BIA assumed Cruz-Carrillo's allegations were credible, and nevertheless found he had not met his burden to avoid removal. Because "the BIA fail[ed] to make an explicit adverse [credibility] determination and instead denie[d] relief on some other basis, we will assume that the applicant was credible in order to review the actual grounds for the ruling." *Haider v. Holder*, 595 F.3d 276, 282 (6th Cir. 2010).

The BIA decided that Cruz-Carrillo "ha[d] not identified any persuasive testimony or evidence which would indicate that his political neutrality was a central reason for his prior harm or would be a central reason for any future harm." While the BIA did not elaborate on its reasoning, it cited two cases in support: *INS v. Elias-Zacarias*, 502 U.S. 478, 483–84 (1992), and *Pascual v. Mukaskey*, 514 F.3d 483, 487 (6th Cir. 2007). A brief review of these cases—both of

which involved Guatemalan petitioners seeking to avoid forced conscription—sheds light on the BIA's conclusion.

In *Elias-Zacarias*, the Supreme Court considered the requests for asylum and withholding of removal of a Guatemalan petitioner who claimed a well-founded fear of persecution based on his resistance to the rebel guerrillas' attempt to recruit him. 502 U.S. at 480. The Court noted that "[e]ven a person who supports a guerrilla movement might resist recruitment for a variety of reasons," and held that the record "failed to show a political motive on Elias-Zacarias' part" because he merely feared "that the government would retaliate against him and his family if he [joined the guerrillas]." *Id.* at 482. Nor did he establish that the guerrillas' attempts to recruit him were based on his personal political opinions, as opposed to the guerrillas' own "generalized 'political' motive." *Id.* Furthermore, even if he feared that the guerrillas would retaliate against him for refusing to join, the Court held Elias-Zacarias had not proved the retaliation would occur because of his political opinion rather than because of his refusal to join and fight. *Id.* at 483.

Our opinion in *Pascual* followed the same reasoning. In that case, the Guatemalan petitioner was involuntarily drafted into a government-created "civilian patrol" before being kidnapped and forced to join the guerrillas. 514 F.3d at 484. He escaped and fled to the United States, fearing reprisal from both the government and the guerrillas. *Id.* at 484–85. We found that the record did not compel the conclusion that Pascual was persecuted on account of the government or guerrillas erroneously imputing political opinions to him. *Id.* at 486–87. Instead, the government and the guerrillas appeared to have acted based on a desire to further their own political interests, not to punish Pascual for his. *Id.*

Cruz-Carrillo argues that the Guatemalan government's soldiers beat him because they incorrectly believed he supported the guerrillas, when in fact he was merely neutral in the civil

war. We have previously held that imputed political opinion can be a protected ground. *Haider*, 595 F.3d at 284–85. An individual can claim he is being persecuted based on a political opinion he does not actually hold, as long as his persecutors *believe* he holds that opinion. *Id.* Notably, "suspected affiliation with an anti-government terrorist group [can] constitute imputed political opinion." *Id.* at 284. We have also noted that a person's conduct can be the basis for an imputed political opinion, and thus provide a nexus to a protected ground. *Id.* at 285 n.9.

The BIA rejected Cruz-Carrillo's claim, but somewhat cryptically only said that he had not "identified any persuasive testimony or evidence" to support the conclusion that "political neutrality was a central reason for" the persecution. The government argues that the BIA reached this conclusion because Cruz-Carrillo "advanced a litany of 'vacillating' allegations regarding the purported motivations of the Guatemalan police and soldiers in his written application and testimony." True, Cruz-Carrillo alternated between claiming that the soldiers attacked him because he would not join them due to his neutrality and claiming they attacked him because they alleged he was a guerrilla. But the BIA explicitly passed on the opportunity to make any adverse credibility determination based on this difference. Furthermore, this evidence does not necessarily demonstrate inconsistency—the soldiers may very well have had a "if you're not with us, you're against us" mentality. Far from Cruz-Carrillo "vacillating" in his theory, it may be that the soldiers did not fully appreciate his political beliefs. They would not be the first people in history to mistake neutrality for supporting the enemy. The weight of the evidence accordingly supports Cruz-Carrillo's story that the attacks were a direct result of his political neutrality as expressed by his refusal to join the soldiers.

Fatal for Cruz-Carrillo, however, is that there is evidence on the other side too. Cruz-Carrillo admitted in his written application that the soldiers attacked him, at least in part, because

of his refusal to join them. The BIA could have reasonably inferred that it was this refusal that caused the attacks rather than his political opinion. That is, the soldiers may have retaliated against anyone who refused to join them, regardless of that person's reason for doing so. It is not enough that the soldiers had a political agenda in attempting to recruit Cruz-Carrillo; they must have persecuted him *because of his political opinion* (or imputed political opinion) as expressed through his resistance to their attempted forced recruitment. *See Elias-Zacarias*, 502 U.S. at 482–83.

Under the highly deferential standard of review we must apply, we can only grant the petition for review if the evidence is so overwhelmingly in Cruz-Carrillo's favor that "no reasonable factfinder could fail to find the requisite fear of persecution." *Id.* at 484. The BIA permissibly inferred that Cruz-Carrillo's political opinion was not a central motivation for the attacks. This is a reasonable conclusion given the record.

Even if we were compelled to find that Cruz-Carrillo has shown past persecution on the basis of his political opinion, the BIA also noted changed country circumstances that could overcome the presumption that he faces future persecution upon removal. *See* 8 C.F.R. § 208.16(b)(1)(i)(A). The BIA's decision was based in part on the fact that the State Department's 2013 Human Rights Report on Guatemala "does not indicate that politically neutral individuals are targeted for persecution in Guatemala." In fact, the Report notes that, while "security forces committed human rights abuses" including "serious crimes such as kidnapping, drug trafficking, and extortion," there were "no reports that the government committed politically motivated killings" and "no reports of politically motivated disappearances."

Cruz-Carrillo says he is still at risk upon return to Guatemala. He points to his own experience from 2012, when he says he was beaten and stabbed by masked soldiers who believed he used to support the guerrillas. He also alleges that he is on a secret government "black list" of guerrilla supporters who are targeted for death despite the cessation of hostilities. We have previously noted that the end of the Guatemalan civil war has diminished individuals' reasonable fears of persecution based on political opinion. *See Pascual*, 514 F.3d at 488. The State Department's 2013 Report provides substantial evidence for the BIA to have reached that conclusion here, despite Cruz-Carrillo's testimony as to his own experiences. We are not compelled to find the BIA was incorrect in giving greater weight to the Report.

### III. Conclusion

For the foregoing reasons, we deny Cruz-Carrillo's petition for review.